# Richmond.

STRAUS V. BODEKER'S EX'X AND ALS.

DECEMBER 5th, 1889.

1. JUDGMENTS—*Legal process—Statute of limitations.*—Where non-resident judgment creditors are summoned by order of publication and no order is made to suspend the issuing of executions, a suit to enforce a contract for the sale of the judgment debtor's land, is no such "legal process" as, under Code 1873, ch. 182, sec. 13, suspends judgment creditors' right to sue out executions and stops the running of the statute of limitations against such judgments.
2. IDEM—*Trust deed for purchase money.*—Where land is conveyed to judgment debtor, and *eo instanti* re-conveyed by him to trustee to secure the purchase money, he has no interest subject to the judgment lien as against the trust deed.
3. CONSIDERATION—*Parol evidence.*—A different consideration from that recited in a deed of conveyance may be established by parol.

Appeal from three decrees of circuit court of Albemarle county rendered June 16, 1880, February 11, 1888, and May 19, 1888, respectively, in the chancery causes of Bodeker against Harman, &c., and Barksdale, trustee, against Bodeker, &c. The decree being adverse to Samuel Straus, surviving partner of Straus, Adler & Harman, he appealed. Opinion states the case.

*S. V. Southall,* for the appellant.

*George Perkins* and *Meredith & Cocke,* for the appellees.

LACY, J., delivered the opinion of the court.

This case is as follows: At the April rules 1880, A. Bodeker, deceased, the testator of the appellee, Bodeker's executrix, filed his bill in the said circuit court against one Charles A. Harman, for the purpose of enforcing a contract of sale made with him of a lot of land in the town of Charlottesville, August 28, 1879: The bill sets forth that on the said 28th day of August, 1879, the said complainant, by written contract, had sold to the purchaser thereof, Charles A. Harman, a certain lot, bought by complainant of one R. F. Omohundro, and others, under the following circumstances: On the 1st day of January, 1862, the said Omohundro had sold and conveyed the said lot to one William A. Hoppe; that on the same day the said Hoppe, by deed of the same date, had conveyed the said lot to one George Carr, in trust to secure the purchase money, which is described in the said deed of trust, a small amount having been paid in cash; that Hoppe failed in business, and did not pay for the said lot, and was wholly unable to do so, and it was agreed between Omohundro, Hoppe, and Bodeker that the contract between Omohundro and Hoppe should be transferred to Bodeker, who undertook to and did pay for the said lot, Hoppe paying nothing, and Bodeker was thus substituted in Hoppe's place as purchaser; that the intention of the parties was that the said Bodeker should stand as the original purchaser from Omohundro, or as if he had purchased from the trustee, Carr, at a sale under the trust deed from Hoppe, and the said Carr, trustee, was instructed by the parties in interest to prepare such papers as would carry this agreement into effect, it being on all sides conceded that Hoppe could pay nothing, and that he had no interest in the lot, as it would not sell for enough to pay off Omohundro's debt under the trust deed; that the plan adopted by the trustee was, with the consent of the creditor, that Omohundro should release his trust-deed lien to Hoppe, and that Hoppe and wife *eo instanti* should convey to Bodeker, and Bodeker should pay, or secure to be paid, to Omohundro the purchase money on the said lot,

all of which was done accordingly; and that while the deed from Hoppe and wife recited a consideration of $4,000, paid by Bodeker to them, this was not a fact, but that the real and only consideration was that Bodeker was to take Hoppe's place as purchaser of the lot from Omohundro, at the price which he (Hoppe) owed on it, and that Omohundro should release him from liability for the same; that this was the substance of the transaction, and that not one cent was paid by Bodeker to Hoppe, but Bodeker paid to Omohundro the entire amount called for by his deed in trust; that the release to Hoppe, the conveyance from Hoppe to Bodeker, and Bodeker's bonds and deed securing their payment to Omohundro, were all of the same date, and parts of one and the same transaction, so that there was no moment of time when any interest or title vested in Hoppe free from the lien of the purchase money on which the lien of judgments against him could attach; that at the date of the conveyance from Omohundro to Hoppe, and Hoppe's trust deed to Carr, and also at the date of Hoppe's deed to Bodeker, there existed two judgments against Hoppe, one of them the judgment of the complainant, which is the subject of this controversy; this was a judgment in favor of the late firm of Straus, Adler & Harman for $408 37, with interest from the 30th of April, 1852, and $9 37 costs, recovered at the October term, 1856, of the circuit court of Albemarle county, and duly docketed, on which execution issued within the year, and was returned, "No effects," and one other small judgment, recited in record, in favor of Peake, Bradley & Co., for $156, with interest from 20th of February, 1851, recovered in May, 1857; that these judgments were never liens upon the lot in question, which he had sold to Harman, but, as Harman raised this as a defence against the payment of the purchase money upon the said lot, due under his contract with Bodeker, that the court was asked to decree that these judgments were not liens upon the lot in question

by reason of the above-stated facts and circumstances, and that Harman be required to specifically perform his contract.

The above-mentioned judgment creditors of Hoppe, being non-residents of this state, were proceeded against by order of publication. In June, 1880, the circuit court decreed that the judgments above mentioned were not, and never had been, liens upon the lot of land in question, nor any part thereof, it being plain, from the proofs in the cause, that the said Hoppe never really had any such interest in the said lot as could be the subject of any lien paramount to that of R. F. Omohundro, which was paid off by Bodeker, who thereby stood in the shoes of said Omohundro, and specific performance was decreed as prayed for against Harman, and a deed ordered to be made by Bodeker in accordance with the said agreement. A sale was subsequently made by Bodeker and Harman to one Barksdale, trustee for, etc., who never paid the purchase money, which was in turn secured by trust deed to Wood, trustee; and so, in 1887, by order of the appellee, Wood, trustee, advertised the lot of land for sale under this deed, whereupon Barksdale, trustee for, etc., procured an injunction upon a bill filed for the purpose, upon a ground of defense based upon these same judgments; whereupon, in December, 1887, Peake, surviving partner, filed his petition in that cause, seeking to set up his judgment, now thirty years and more old; claiming that his judgment was not barred by the statute, because of the institution and pendency of the suit of *Bodeker* v. *Harman*, which had stopped the running of the statute; and in February, 1888, a decree was rendered dissolving the injunction and dismissing Peake's petition. On May 16, 1888, the appellant, Straus, as surviving partner, filed his petition for rehearing, etc., and seeking to set up his judgment, asking to have the decrees of June, 1880, and of February, 1888, set aside and declared null and void, etc. On the 19th of May, 1888, a decree

was rendered sustaining a demurrer to this petition and dismissing the same; whereupon Straus, the appellant, appealed to this court.

There are many assignments of errors which it will not be necessary to notice in the view we take of this case, which turns, we think, upon plain and well-settled principles. We will remark, first, that the judgments are admitted to be, and if not so admitted to be, are clearly barred by the statute of limitations (sec. 12, ch. 182, Code Va. 1873), unless they are saved by sec. 13 of same chapter of the Code, which is as follows: "No execution shall issue nor any *scire facias* or action be brought on a judgment in this state, other than for the commonwealth, after the time prescribed by the preceding section, [sec. 12, ch. 182, Code 1873,] except that, in computing the time, any time during which the right to sue out execution on the judgment is suspended by the terms thereof, or by legal process, *shall be omitted.*" It is contended by the appellant that the institution of the Bodeker suit against Harman to enforce his contract of sale of the lot in question was such "*legal process*" as suspended the right to sue out execution on the said judgment.

We do not think that this suit in any way suspended the right to sue out execution on the judgment. Its object was to enforce a contract for the sale of the land in question, and to settle between the vendor and vendee the direction in which the purchase money should properly go; and, while every effort was made by substituted process to give notice to the non-resident owners of the judgment, whose whereabouts had become unknown during the pendency of the late war, there was no order actually made to suspend the right to sue out execution on the judgment, and such was not the object of the said suit, and its pendency did in no way whatever suspend the right of the judgment creditor to sue out execution on the said judgment. In this case all the proceedings operated rather as an invitation to this lagging creditor to come forward

and claim his lien, if he had any, than to obstruct him by legal process or otherwise (*Dabney* v. *Shelton*, 82 Va., 350); and the period provided by the said twelfth section having elapsed, the judgment is barred by the statute of limitations. But, if there be any doubt upon this point, we think the decree of June, 1880, was right upon the merits.

The 6th sec. of ch. 182 provides a lien for the judgment creditors " on all the real estate of or to which such person [the judgment debtor] shall be possessed or entitled at or after the date of such judgment." In this case Hoppe, the judgment debtor, was not the owner of the real estate in question at the date of the judgment, but subsequently it was purchased by him, under a contract as to which he defaulted, and he was wholly unable to pay for the said land. It was, however, conveyed to him by deed, and *eo instanti* reconveyed by him to a trustee to secure the purchase money therefor; and the seisin of Hoppe was transitory only, and not such an interest in the land as became subject to the lien of the judgment against him in preference to the trust deed to the trustee Carr. It was said by Lewis, P., in *Cowardin* v. *Anderson*, 78 Va., 90, citing Chancellor Kent, in his Commentaries, (vol. 4, pp. 173, 174,) and Staples, J., in *Summers* v. *Darne*, 31 Gratt., 791: "In one instance a mortgage will have a preference over a prior docketed judgment, and that is the case of a sale and conveyance of land, and a mortgage taken at the same time in return to secure the payment of the purchase money. The deed and the mortgage are considered as parts of the same contract, and constituting one act; and justice and policy equally require that no prior judgment against the mortgagor should intervene and attach upon the land during the transitory seisin, to the prejudice of the mortgagee." An again, in the same case, it is said: "And it applies equally in favor of a third person, who advances the purchase money, and, at the time of the conveyance, takes a mortgage on the land for his indemnity;" citing, also 4 Kent, Comm. 30; *Curtis* v. *Root*, 20 Ill., 53;

*Kaiser* v. *Lembeck*, 55 Iowa; *Moring* v. *Dickerson*, 85 N. C., 466; *Clark* v. *Munroe*, 14 Mass., 351.

There was no ground upon which the decree of June, 1880, should have been reheard, and the circuit court of Albemarle did not err in refusing to do so, and in dismissing the two petitions of Straus and of Peake respectively. They had no interest in the lot of land, if these petitions had been filed in time—which they were not. The many errors assigned, and ably and ingeniously argued by counsel, as to the formality of the proceedings against the non-resident judgment lienors, are immaterial, as well as the question whether the said rehearings were asked by the non-resident petitioners within the prescribed period. Upon the whole case the decrees complained of and appealed from are all plainly right, and they are affirmed.

DECREES AFFIRMED.