# Richmond.

## GUNNELL'S ADMINISTRATOR v. DIXON'S ADMINISTRATRIX.

### January 29, 1903.

### Absent, Cardwell, J.

1. LIMITATION OF ACTIONS—*Suspension—Creditor's Bill—Order for Account.*—A bill filed by the grantor against the grantee's personal representative and heirs to have a deed absolute on its face declared to be a mortgage, and which results in a decree for an account of the liens which the grantee had undertaken to pay as a consideration for the conveyance, and of the liens against the land at the time of the conveyance, is not a creditor's bill which will stop the running of the statute of limitations on judgments against the grantor.

2. LIMITATIONS OF ACTIONS—*Suspension—Pending Suit.*—As a general rule, the pendency of a suit operates to suspend the statute of limitations as to the parties thereto so far as the subject matter of that suit is concerned. But the suspension only exists as to that particular suit, and not as to the cause of action involved therein. *Quaere.* In view of the provisions of section 3573 of the Code, does the pendency of a general creditor's suit suspend the act of limitations as to a judgment sought to be enforced in another suit?

3. LIMITATION OF ACTIONS—*Suspension—Order for Account—Proving Liens—Petition.*—An order for reference for an account of liens suspends the running of the statute of limitations as to all creditors who come in under the order, and prove their liens in the suit. It also suspends the statute as to such lien creditors as. for good cause have not proved their debts, but thereafter come in by petition and assert their liens, without unreasonable delay, and while the fund sought to be subjected is still under the control of the court. The evidence in the case in judgment shows good cause for delay in asserting the lien.

4. EQUITY PRACTICE—*What Decrees are Final.*—A decree cannot be said to be final which directs a receiver to proceed "to get in all funds

pertaining to the cause which have not heretofore been brought in and disposed of, and to make report thereof to the court," although it settles the rights of the parties to the funds in hand. It cannot be said of such a decree that the relief contemplated has been completely given, or that no question is left undecided, and no further action "in the cause" is necessary. Unless this can be said of a decree it is not final.

Appeal from a decree of the Circuit Court of Campbell county pronounced October 28, 1901, in a suit in chancery therein pending under the style of *Grigsby* v. *Grigsby,* wherein the appellants filed a petition to which all the parties to said suit and another were parties defendants.

*Reversed in part.*

The opinion states the case.

*R. W. Moore, R. D. Yancey* and *Leon Goodman,* for the appellants.

*Edward S. Brown,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

In July, 1870, A. S. Grigsby instituted his suit in the Circuit Court of Campbell county against the personal representatives and heirs of his son, John Randolph Grigsby, deceased, Charles H. Lynch and William H. Hall, to sell a tract of land which had been conveyed to the son by Hall, the vendee of Lynch, and in which the father claimed an interest, to pay the unpaid purchase money due to Lynch, and to settle a mercantile partnership which had existed between father and son, under the firm name of A. S. and J. R. Grigsby. By a decree entered in January, 1871, it was held that the father and son were equal partners in the Lynch-Hall tract of land. In the year 1873 Turner Dixon's administrator, the appellee, filed his petition in the cause seeking to subject the interest of A. S. Grigsby in the land to the lien of a judgment for $2,000, ren-

dered in his favor at the May term, 1867, of the court against A. S. Grigsby. . Between that time and the April term, 1889, of the court, other judgment creditors filed their petitions in the cause for the purpose of subjecting the interest of their respective debtors in the land to the payment of their judgments. At the April term of the court, 1889, a decree was entered directing one of its commissioners "to take an account of liens upon the fund, representing the interest of the purchasers from Chas. H. Lynch, after the satisfaction of the purchase money due him, and the order of priority of such liens so as to show what will be the proper disposition to be made of the fund in this cause." The commissioner took the account, and reported his action to the court in October of that year. This report, to which there were exceptions, was not acted on until January, 1900, when a decree was entered settling the rights of the parties before the court as to the land fund, and directing the commissioner and receiver in the cause to pay any unpaid costs and taxes, and to pay the residue of the land fund to the parties entitled as ascertained by the decree. The decree further directed that the commissioner and receiver should proceed to get in all other funds pertaining to the cause which had not theretofore been brought in and disposed of, and make report thereof to the court.

In January, 1901, the appellants filed their petition at rules, in which they stated briefly the proceedings had in the cause; averred that there were four judgments against A. S. Grigsby not proved in the cause which were older and superior liens upon his interest in the land fund to the judgment lien of Dixon's administrator which had been decreed to be paid.

The petition, after describing the judgments and stating why they were not asserted earlier, asked that the petitioners might be made parties; that the decree of the January term, 1900, might be reheard and set aside; that a decree be rendered establishing the right of the owners of the judgments set up in the

petition, and the judgments be declared prior liens to the judgment of Dixon's administrator; that the commissioner and receiver of the court be restrained from executing the decree of the January term, 1900, so far as it affected the interest of the petitioners, and for general relief.

To that petition Dixon's administrator filed his demurrer and answer. Upon a hearing of the cause, the court dismissed the petition of the appellants, and from that decree this appeal was taken.

Two errors are assigned. The first is that the court erred in holding that the judgments asserted by the appellants were barred by the statute of limitations. The Hooe judgment was obtained in June, 1859, on which an execution was issued on the 16th of that month. There was no return thereon. The judgment in favor of the Manassas Gap Railroad Company was rendered in 1860. Upon it an execution was issued, and a forthcoming bond given upon which there was judgment in 1869. Upon that judgment execution was issued August 10, 1869. Upon it there was no return.

The judgment in favor of Fairfax was rendered in 1860. An execution was issued upon it November 17, 1860, upon which there was no return. On the 5th of January, 1861, another execution was issued upon which a forthcoming bond was taken. Upon it a judgment was rendered in June, 1874. Executions were issued upon it, the last of which was dated March 14, 1877, and upon it there was no return.

The other judgment, that of Gunnell, was obtained in 1860. Execution was issued thereon August 26th of that year, and upon it there is no return. In June, 1870, this judgment was revived by *scire facias.* Upon it an execution was issued July 1, 1870, and returned the 20th of that month endorsed "No property found."

Under the provisions of sections 3577 and 3578 of the Code

all of these judgments, except the Gunnell judgment, were barred by the statute of limitations prior to the decree of April term, 1889, directing an account of liens in this cause—unless, as is claimed by the appellants, they are saved from the effect of those statutes by the suit of *Grigsby* v. *Grigsby*, alleged to be a general creditor's suit brought in the Circuit Court for Fairfax county in August, 1870, and still pending there, and in which the appellants had proved their judgments at a time when executions could be issued upon them.

None of the pleadings, decrees or proceedings had in that cause are copied into the record brought to this court, but there is a stipulation in the record by which it is agreed that the demurrer and answer of Dixon's administrator to the petition of appellants "are true in all their recitals of pleadings, proceedings and records and of facts, and that all legitimate references may be drawn therefrom in considering the questions on appeal from the decree of October, 1901."

The learned Circuit Judge who had copies of the bill, decrees and proceedings in the Fairfax case before him when he rendered the decree appealed from, says in his opinion, which is sustained by the record before us on this question, that "the purpose of this suit" (the Fairfax case), "as expressed in the bill, was to have a conveyance made by A. S. Grigsby to J. R. Grigsby, decreed to be an equitable mortgage, and to provide for the payment of certain debts for which the said J. R. Grigsby, then deceased, was bound, from the sale of the lands conveyed in said conveyance. By decree of 1870, the court provided that Love, Commissioner, should ascertain, in particular, the debts for which John R. Grigsby was bound as endorsor of A. S. Grigsby at the time of the conveyance, the payment of which the endorsor had assumed, and whether any of the said creditors at the time had a specific lien upon the lands of A. S. Grigsby by judgment, or otherwise. The commissioner was also directed to ascertain what liens, by judgment or otherwise,

existed against the real estate of A. S. Grigsby at the time of the conveyance to J. R. Grigsby. There were other enquiries peculiarly relating to the status of affairs between the said J. R. and A. S. Grigsby."

This was clearly not a general creditors' bill in its inception, nor was it made such by the subsequent proceedings had in it; for the order of reference did not require an account of all the liens against the lands of A. S. Grigsby to be taken, but only an account of the liens which John R. Grigsby had undertaken to pay as a consideration for the land conveyed to him, and the liens against the land at the time of the conveyance. Not being a general creditor's bill in its inception, nor made such by the proceedings had therein the doctrine invoked by the appellants, that the statute of limitations is suspended when a decree for an account of the outstanding indebtedness is entered in a creditor's suit can have no application in this case. Even if it were a general creditor's suit, it may well be doubted whether under the provisions of sec. 3573 of the Code, the doctrine invoked, which is not founded upon legislative enactment, but is a mere rule of courts of equity for the more convenient administration of the debtor's estate, and to avoid a multiplicity of suits (*Callaway* v. *Saunders*, 99 Va. 350, 352, 38 S. E. 182), could suspend the running of the statute of limitations or prevent its being relied on as a defence when it is sought to enforce the judgments in any proceeding other than the general creditor's suit in which the judgments had been asserted, the general rule being that the pendency of a suit operates to suspend the statute as to parties thereto so far as the subject matter of that suit is concerned. But the suspension only exists as to that particular suit, and not as to the cause of action involved therein. *Dabney* v. *Shelton*, 82 Va. 349, 351, 4 S. E. 605; *Straus* v. *Bodeker*, 86 Va. 543, 547, 10 S. E. 570.

We are of opinion that the Circuit Court did not err in holding that the judgments in favor of Hooe, Fairfax and the Ma-

nassas Gap Railroad Company were barred by the statute of limitations, but that it did err in sustaining the statute of limitations as to the Gunnell judgment. The right to issue execution upon that judgment did not expire until July, 1890, which was after the order of reference for an account of liens was made in the cause which stopped the running of the statute of limitations as to all creditors who came in under the order and proved their liens or asserted them in the suit. *Callaway* v. *Saunders, supra.* Whilst the claimant of the Gunnell judgment did not come in under that order, she did become a party to the suit by her petition in which she asserted her lien; and whilst the fund which she sought to subject was still under the control of the court.

The decree of the January term, 1900, under our decisions, we do not think was a final decree, as the Circuit Court held. By that decree, after settling the rights of the claimants to the fund arising from the sale of partnership land, the court directed its commissioner and receiver to proceed "to get in all funds pertaining to the same which have not heretofore been brought in and disposed of, and make report thereof to the court." What those funds are does not appear, as only a small portion of the record is before us. But with that direction in the decree it does not appear that the relief contemplated by the court had been completely given; that no question was left undecided, and that no further action of the court "in the cause" was necessary. Without this can be said of a decree it is well settled that the decree is not final. *Cock's Admr.* v. *Gilpin*, 1 Rob. 20, 28, &c.; *Rawlings* v. *Rawlings*, 75 Va. 78.

Neither do we think that the claimant of the Gunnell judgment had lost her right to assert her judgment by her delay. It is true that she knew of the pendency of this suit from its inception; but it also appears that the creditors of A. S. and J. R. Grigsby were seeking to subject the land or its proceeds as partnership assets to the execution of the individual creditors

of A. S. Grigsby. This controversy was not settled in favor of his individual creditors until January, 1900. Within less than a year after this question was settled and before a final decree was entered, she asserted her judgment. Her delay merely cannot deprive her of a clear legal right.

We are of opinion that the decree appealed from is erroneous, in so far as it dismissed the petition as to the Gunnell judgment, but in all other respects correct. The decree must, therefore, be reversed as to the Gunnell judgment, and the cause remanded to the Circuit Court for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed in part.*