THE INDRAPURA.

(District Court, D. Oregon. June 14, 1909.)

No. 4,757.

1. INSURANCE (§ 607*)—MARINE INSURANCE—LOSS OF CARGO—SUBROGATION OF INSURER—ACTION FOR DAMAGES BY INSURER AS ASSIGNEE.
   An insurer of cargo lost, who has taken an assignment of the claim of the assured against the vessel, must recover thereon, if at all, in the right of its assignor, and not by any contractual relation springing from the contract of insurance.
   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1512; Dec. Dig. § 607.*]

2. SHIPPING (§ 125*)—CARRIAGE OF GOODS—DEVIATION.
   It is the duty of the owner of a vessel receiving cargo for transportation to proceed without unnecessary deviation or delay in the course

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agreed upon in the contract, or if none be designated in the customary or usual track of sea, to the port of delivery.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 459; Dec. Dig. § 125.*]

**3.** SHIPPING (§ 125*)—LIABILITY FOR LOSS OF CARGO—DEVIATION.

The placing of a vessel in dry dock after she had received cargo on board for the voyage, for the purpose of painting her bottom when that was not a maritime necessity, constituted a deviation from the voyage, which rendered the vessel liable for a loss of cargo by fire while she was so in the dry dock, in the absence of affirmative proof that the deviation was not a contributing cause; the rule of some courts that mere delay does not render a carrier liable for a loss of goods of which the delay was not the proximate cause being limited, and not applicable to a case of positive breach of contract by deviation which makes the carrier an insurer against any loss resulting directly or indirectly.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 460; Dec. Dig. § 125.*]

**4.** SHIPPING (§§ 134, 141*) — LIABILITY FOR LOSS OF CARGO — STATUTORY AND CONTRACT EXEMPTIONS.

The owner of a vessel which has deviated from her voyage by his order is not relieved from liability for loss of cargo by fire during such deviation either by an exemption of loss by fire in the bill of lading or by Rev. St. §§ 4282, 4283 (U. S. Comp. St. 1901, p. 2943), which exempt him from liability for fire "unless caused by the design or neglect of such owner," and limit his liability for any loss occurring without his privity or knowledge.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. §§ 134, 141.*

Statutory exemptions of shipowners from liability, see notes to Nord-Deutscher Lloyd v. Insurance Co. of North America, 49 C. C. A. 11; Ralli v. New York & T. S. S. Co., 83 C. C. A. 294.

Limitation of owner's liability; see note to The Longfellow, 45 C. C. A. 387.]

In Admiralty. On exceptions to libel.

Williams, Wood & Linthicum, for libelant.

Bauer & Greene, for The Indrapura.

W. W. Cotton and A. C. Spencer, for respondent.

WOLVERTON, District Judge. The steamship Indrapura was chartered by the Oregon Railroad & Navigation Company from the Indrapura Steamship Company to ply between the ports of Portland, Or., and Hong Kong, China. The charter party was assigned by the Oregon Railroad & Navigation Company, with the consent of the steamship company, to the Portland & Asiatic Steamship Company, a subsidiary concern of the Oregon Railroad & Navigation Company. In October, 1902, on a proposed voyage out from Hong Kong bound for Portland, she received from libelant's assignors for carriage to Portland 361 bales of jute, 119 bales of Hessian cloth, and 60 bales of twilled cloth, alleged to be of the value of upwards of $15,000. This cargo had been shipped from Calcutta to Hong Kong on another steamer, and was at the latter port transhipped to the Indrapura. It appears from the libel that, after the shipment was received by the Portland & Asiatic Company and laden aboard the vessel for transportation to Portland in accordance with the bill of lading, the steamship, by order and direction of the owners and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

managing owner, and with the full knowledge and consent of the Portland & Asiatic Company, was placed in a dry dock at Hong Kong, without maritime necessity, to have her bottom painted; that while in dry dock, and after she had been there for two days, and while the goods aforesaid were laden aboard of her as a part of her cargo and while her bottom was being painted, to wit, on November 16, 1902, the Indrapura by the negligence of the owners and officers and crew was set on fire; that after ineffectual attempts to extinguish the fire that portion of the ship's hold containing the merchandise was flooded with water, in consequence of which the jute and Hessian cloth were destroyed or rendered valueless, and the twilled cloth was damaged to such an extent that the salvage on it amounted to but $284.58. Libelant is assignee of the claims for damage result‑ ing from the disaster, and brings this suit to recover therefor.

Exceptions were interposed to the libel, which proceed upon the ground that the respondent is exempt from liability under the provisions of section 4282 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 2943), damage to the cargo having been caused by "fire happening to or on board the vessel," coupled with the general objection that the libel does not state facts sufficient upon which to base the suit. Libelant's cause is based upon the theory that by going into dry dock after the goods were received for transportation the ship was guilty of a deviation, in consequence of which the owners became liable in damages for the value of the cargo destroyed as for a breach of the contract of affreightment. The injured cargo having been insured against marine loss, and the libelant having taken an assignment of the assured's right of action against respondent, the libelant must recover, if at all, in the right of the shipper against the carrier, and not by any contractual relation springing from the contracts of insurance. St. Louis, etc., Railway v. Commercial Ins. Co., 139 U. S. 223, 235, 11 Sup. Ct. 554, 35 L. Ed. 154. It is the duty of the owner of a vessel receiving cargo for transportation to proceed without unnecessary deviation or delay in the course agreed upon in the contract, or, if none be designated, in the customary or usual track of sea to the port of delivery. Carver, Carriage by Sea, § 285; 1 Parsons on Shipping & Admiralty. p. 171, note; Niagara v. Cordes, 21 How. 7, 16 L. Ed. 41; Express Co. v. Kountze, 8 Wall. 342, 19 L. Ed. 457; Merrick v. Webster, 3 Mich. 268; Davis v. Garrett, 6 Bing. 716, 19 E. C. L. 212. It therefore becomes necessary to inquire, first, whether the vessel deviated; and, second, what the effect thereof is, if it did.

The term "deviation" in the law of shipping has at the present day a varied meaning and wide significance. It was originally employed, no doubt, for the purpose its lexicographical definition implies, namely, to express the wandering or straying of a vessel from the customary course of voyage; but it seems now to comprehend in general every conduct of a ship or other vehicle used in commerce tending to vary or increase the risk incident to a shipment. Thus delay in starting a shipment when unreasonable or unexcused came to be regarded as a deviation, not because the vehicle employed departed from the usual route of travel, but because the risk of shipment was changed or increased, and became, in effect, not the same as the one with reference

to which the parties contracted.   3 Kent's Com. 315; Coffin v. Marine Ins. Co., 9 Mass. 436; Phillips v. Irving, 49 E. C. L. 325; Mount v. Larkins, 8 Bing. 108, 21 E. C. L. 214.   The reason for grafting this meaning upon the word is stated in this last case to be:

"Because the voyage, commenced after an unreasonable interval of time, would have become a voyage at a different period of the year, at a more advanced age of the ship, and, in short, a different voyage than if it had been prosecuted with proper and ordinary diligence; that is, the risk would have been altered from that which was intended by all parties when the policy was effected."

So also for like reasons towing or being towed was added to the list of acts to which is properly imputable an element of risk not contemplated by the contract, and therefore constituting a deviation.   Natchez Ins. Co. v. Stanton, 2 Smedes & M. (Miss.) 340, 41 Am. Dec. 592; Scaramonga v. Stamp, 5 C. P. Div. 295; Crocker v. Jackson, 1 Sp. 141, Fed. Cas. No. 3,398; Stewart v. Tennessee Marine Ins. Co., 1 Humph. (Tenn.) 242.   In consonance with the enlargement of the meaning of "deviation" in maritime law to meet the exigencies of commerce, it seems a just estimate of its present scope that the Supreme Court of Ohio made in Wilkins v. Insurance Company, 30 Ohio St. 317, 341, 27 Am. Rep. 455, namely:

"Strictly speaking, a 'deviation' originally meant only a departure from the course of the voyage, but now it is always understood in the sense of a material departure from or change in the risk insured against, without just cause"—quoting 2 Parsons, Mar. Ins. p. 1.

The same broad meaning is recognized and sanctioned in Audenreid v. Mercantile Ins. Co., 60 N. Y. 482, 19 Am. Rep. 204:

"It [deviation] is not confined to a departure from or going out of the direct or usual course of a voyage; but it comprehends unusual or unnecessary delay or any act of the charterer or his agent which, without necessity or just cause, increases or changes the risk included in the policy."

And in Bulkley v. Insurance Co., 2 Paine (U. S.) 82, Fed. Cas. No. 2,118, Thompson, Circuit Justice, said:

"The shortness of time or distance of deviation is immaterial if voluntary and without necessity, and not justified by usage."

A case of value in this discussion is Amsinck v. American Ins. Co., 129 Mass. 185, 186, where we find the following statement of the law:

"Any departure from the route named in the policy to a port or place not named, and any delay in prosecuting the voyage, without necessity or just cause, or any delay at a port named in the policy, for the prosecution of business not connected with the business of the voyage, or any unreasonable delay at such port in prosecuting the business of the voyage, is a deviation. Whether the risk is increased thereby is immaterial.   The assured has no right to substitute a different voyage from that which is insured, and can only recover for a loss sustained while the ship is prosecuting the voyage named in the policy; and, if she has deviated prior to the loss, she is not then prosecuting the voyage for which she was insured.   Whenever, therefore, she departs from the route, or delays in the prosecution of it, it is incumbent on the assured to show that the departure was caused by necessity, or that the delay at a port named in the policy was reasonable under the circumstances in order to accomplish the objects of the voyage.   Burgess v. Equitable Ins. Co., 126 Mass. 70, 30 Am. Rep. 654, and cases cited; African Merchants v. British Ins. Co., L. R. 8 Ex. 154."

The significance of the term "deviation" thus developed has peculiar adaptability and relation to the law of insurance. As applied to the relation of carrier and shipper, shorn of all obligations entailed by reason of insurance of cargo or freight, the term is not applied in so strict a sense as will appear further on in the discussion of this controversy. At least, it would seem that there exists in legal contemplation and consequence a difference between a deviation proper—that is, an unwarranted digression from a fixed and contemplated route, or course—and an unnecessary and inexcusable delay or interruption in forwarding freight from point where received to point of destination.

Let us apply the principle to the act of the Indrapura in going into dry dock after receiving libelant's merchandise for transportation. The contract of carriage was by the law maritime that libelant's property should, after its receipt and deposit aboard ship by respondent, be transported promptly, directly, without unnecessary delay, and by the usual route to its destination. This manifestly was not done. Instead, it was taken to a place never contemplated or agreed upon, namely, to a dry dock, where, together with the ship, it was lifted entirely out of the water and subjected to totally different or additional sources of risk, among which may be mentioned fire, theft, and seizure. Since the distance taken to effect this different and increased risk can cut no figure, I do not see what better right respondent had to take the cargo into dry dock at Hong Kong than it would have had to take it into such a place at Nagasaki or Yokohama, or some other foreign port, or how, in principle, it can make the case any different in what port the fault occurred, or whether the distance covered for such purpose and before the act was accomplished be one mile or one hundred. The effect upon the contract is, it seems to me, the same. Indeed, it cannot be supposed it would be contended that, if the same thing were done at some port on the voyage, there would not be a deviation. Yet the effect on the contract, all must agree, is the same in one case as in the other. Whether there was an increase of risk or not the elevation of the ship out of its natural element after the merchandise was received for transportation was an act beyond question not contemplated by the shipper, and was assuredly a breach of the implied contract that the ship should remain upon the water and proceed with all practicable dispatch to destination; and the only thing that would or could justify a deviation from this course is an absolute maritime exigency. As to this, the libel alleges there was none. If there were, and this existed prior to the loading of the cargo, it would constitute no excuse, and it cannot now be assumed that any arose after the cargo was taken in. I think a case of deviation has clearly been made out within the principle and reasoning of the adjudged law.

This brings us to an inquiry as to what was the effect of the deviation. A leading case upon the subject is that of Davis v. Garrett, 6 Bingham, 716. From the report it appears that the plaintiff shipped a cargo of lime, to be carried on a vessel called "Safety" from Bewly Cliff, in the county of Kent to the Regent's Canal, in the county of Middlesex, "the act of God, the king's enemies, fire, and all and every other dangers and accidents of the seas, rivers, and navigation, of what

nature or kind soever excepted." The vessel, however, did not proceed by the customary and usual course of passage, but departed therefrom into certain places called the "East Swale" and Whitstable Bay, and while so out of her course was overtaken by storm and heavy seas, which wet the lime, causing the vessel to ignite and burn, whereby both it and the cargo were destroyed. The opinion of Tindal, C. J., is so apposite and cogent that I take the liberty of quoting from it at considerable length. Two points are discussed, the first only of which is relevant here. As to this, which was "whether the damage sustained by the plaintiff was so proximate to the wrongful act of the defendant as to form the subject of an action," the court says:

"But the objection taken is that there is no natural or necessary connection between the wrong of the master in taking the barge out of its proper course, and the loss itself; for that the same loss might have been occasioned by the very same tempest, if the barge had proceeded in her direct course. But, if this argument were to prevail, the deviation of the master, which is undoubtedly a ground of action against the owner, would never, or only under very peculiar circumstances, entitle the plaintiff to recover; for, if a ship is captured in the course of deviation, no one can be certain that she might not have been captured if in her proper course. And yet, in Parker v. James, 4 Campb. 112 (a), where the ship was captured whilst in the act of deviation, no such ground of defense was even suggested. Or, again, if the ship strikes against a rock, or perishes by storm in the one course, no one can predicate that she might not equally have struck upon another rock, or met with the same or another storm, if pursuing her right and ordinary voyage. The same answer might be attempted to an action against a defendant who had by mistake forwarded a parcel by the wrong conveyance, and a loss had thereby ensued; and yet the defendant in that case would undoubtedly be liable. But we think the real answer to the objection is that no wrongdoer can be allowed to apportion or qualify his own wrong; and that as a loss has actually happened whilst his wrongful act was in operation and force, and which is attributable to his wrongful act, he cannot set up as an answer to the action the bare possibility of a loss, if his wrongful act had never been done. It might admit of a different construction if he could show, not only that the same loss might have happened, but that it must have happened if the act complained of had not been done; but there is no evidence to that extent in the present case."

The doctrine seems to have the sanction of the lower federal courts. In Bond v. Cora, 3 Fed. Cas. No. 1,621, which involves an alleged departure of a vessel from the accustomed course, Washington, Circuit Justice, has this to say:

"Whether he (the freighter) be insured or not, the owner of the vessel is responsible to him, if a loss happen in consequence of the deviation. If so, then it is the owner of the vessel, and not the freighter, who risks the value of the cargo as well as that of the vessel and freight."

In Knox v. The Ninetta, 14 Fed. Cas. No. 7,912, which was also a case of a departure by the vessel by running into the river Piankitank, in Virginia, and taking additional cargo upon her deck, and also into Norfolk, by reason whereof she sprung a leak and the ship's cargo was damaged, Randall, District Judge, says:

"The greatest difficulty I have had in this case has been to determine whether this damage was occasioned by the fault or improper conduct of the captain in putting into the Piankitank; but, when I reflect that this was in violation of an express contract with the shipper, who was put to considerable trouble and expense in order to obtain the exclusive use of the vessel, I think

the party who violates such a contract, and takes in additional cargo, without the consent of the first shipper, assumes the risk and responsibility of an insurer, and should be liable for any loss that may afterwards occur."

Referring to the conclusions thus reached, Mr. Parsons says: "This we consider to be the well-settled rule of law." 1 Parsons on Shipping & Admiralty, p. 171, note 4.

The weight of authority elsewhere seems to be to the same purpose. In Crosby v. Fitch, 12·Conn. 410, 31 Am. Dec. 745, the jury was instructed that if the master of the vessel departed from the usual route in pursuing his voyage without reasonable necessity, and the loss of which the plaintiff complained was occasioned thereby, the owner of the vessel would be liable, and the Supreme Court affirmed the ruling. In the S. D. Seavey Company v. Union Transit Company, 106 Wis. 394, 82 N. W. 285, where there was a clear deviation, the court says:

"Under its contract it (the defendant) had no right to adopt any method other than that specified for transportation and delivery of the goods, and, when it did so, it became liable as an insurer for any injury that might result by reason of its unauthorized act."

So in Robertson v. N. S. Company, 139 N. Y. 416, 419, 34 N. E. 1053, 1054, the court says:

"It cannot be disputed that, if there was such a deviation as is claimed (a carriage by rail instead of by boat), the defendant became an insurer, and thus responsible for all loss and damage to the merchandise, even from unavoidable casualty."

Other cases which involve carriage by railroad by different route than contemplated by the contract of carriage are to the same effect. See Phillips et al. v. Brigham, Kelly & Co. et al., 26 Ga. 617, 71 Am. Dec. 237; Georgia Railroad Company v. Cole & Co., 68 Ga. 623; Merchants' Despatch Transportation Co. v. Moses Kahn et al., 76 Ill. 520; Chicago Great Western Ry. Co. v. Dunlap, 71 Kan. 67, 80 Pac. 34; Bibb Broom Corn Co. v. Atchison, T. & S. F. R. Co., 94 Minn. 269, 102 N. W. 709, 69 L. R. A. 509, 110 Am. St. Rep. 361. Textwriters take a like view of the proposition. Carver, in his work on Carriage by Sea, § 287, says:

"When a vessel has deviated from her proper course, the shipowner is not only liable for the delay, but he becomes absolutely responsible for any loss or damage to the goods which may occur during the deviation, and which can be attributed to it. He is not protected by the exception of perils in the contract."

Hutchinson in his work on Carriers (section 294) is equally explicit. He says:

"So, if the carrier deviate without necessity from the regular and usual course, he will be held responsible for any loss which may occur, whether by the act of God or from any other cause. And it will not be competent for him to show that, had he gone the usual and customary route, he would in all probability have encountered the same danger with the same consequences. Nor will it avail him that, had he done so, the same misfortune would beyond a reasonable doubt have overtaken him. Having been guilty of an inexcusable fault in the commencement of his undertaking, he takes the risk of all the consequences to its end, and the law will not permit him to say, when the loss happens, that the chances were that it would have happened in the same way and from the same cause had he done his duty. And if there be two

routes, one of which is more dangerous than the other, which is known to the carrier, if he take the unsafe or dangerous route instead of the safer one, he takes the risk of loss by so doing."

See, also, 1 Parsons on Shipping & Admiralty, cited supra.

Without looking further, these authorities would seem to be conclusive of the question of the carrier's liability for injury or loss arising by reason of the deviation from the agreed route of carriage, and this regardless of the question of the proximity of cause. There is, however, a well-considered line of cases which clearly apply the doctrine of proximate cause where the carrier has been guilty of delay through negligence and the freight is injured or destroyed, whereas there would have been no injury had there been no delay. The application of the rule is based upon the ground that the carrier cannot reasonably anticipate the result of his delay, and that for aught he could possibly foresee promptness might expose the freight to the risk quite as much as delay. Hence it is held, using the language of the court in Hoadley v. Northern Transportation Company, 115 Mass. 304, 307, 15 Am. Rep. 106:

"In actions of this description the injury complained of must be shown to be the direct consequence of the defendant's negligence. This is the only practical rule which can be adopted by courts in the administration of justice. It is not enough that the act charged may constitute one of a series of antecedent events without which, as the result proves, the damage would not have happened. The legal damages which follow any wrong are only such as, according to common experience and the usual course of events, might reasonably be anticipated. The defendant's liability extends only to natural and probable consequences."

This was a case arising from delay in forwarding some machinery from Chicago, Ill., whereby it was destroyed by the great fire of 1871, and of this the court further says:

"The delay did not destroy the property, and there was no connection between the fire and the detention."

Another case illustrative of the principle is Morrison v. Davis, 20 Pa. 171, 57 Am. Dec. 695. A canal boat was delayed by reason of its being drawn by a lame horse. While on its voyage the boat was overtaken by an extraordinary flood, and wrecked, and its cargo destroyed. Had it not been for the delay, the storm would not have been encountered, but nevertheless it was held that the flood was the proximate, and the delay only the remote cause of the injury to the cargo, and the carrier was relieved of liability. But see Phila., etc., R. Co. v. Beck, 125 Pa. 620, 17 Atl. 505, 11 Am. St. Rep. 924. In another case analogous to that—Daniels et al. v. Ballantine et al., 23 Ohio St. 532, 540, 13 Am. Rep. 264—the court says:

"It (the unnecessary delay) constituted a breach of the contract, and for any injury naturally resulting therefrom the defendants were clearly responsible, but except by a conjunction, which there was no reason to anticipate, and which was merely fortuitous, with a subsequent event, it had no agency in causing the loss of the barge. Of that loss the storm was the proximate and sufficient cause."

Other cases to the same purpose are Denny v. N. Y. C. R. R. Co., 13 Gray (Mass.) 481, 74 Am. Dec. 645; Railroad v. Millsaps, 76 Miss.

855, 25 South. 672; Herring v. Chesapeake & W. R. Co., 101 Va. 778, 45 S. E. 322; Elam et al. v. St. Louis & S. F. R. Co. (Mo. App.) 93 S. W. 851. The rule has furthermore been adopted by the federal Supreme Court in Railroad Company v. Reeves, 10 Wall. 176, 19 L. Ed. 909, where it was held that, "in case of a loss of which the proximate cause is the act of God or the public enemy, the common carrier is excused, though his own negligence or laches may have contributed as a remote cause." While there are strong authorities averse to the rule here adopted, I am bound by the precedent of Railroad Company v. Reeves, and should follow it without reserve were the rule applicable to the facts of the present controversy. It will be noted, however, that these are all cases where delay and not departure from an agreed route of carriage has been the contributing, but remote, cause of the injury complained of. But one case has been cited, nor have I discovered any other, which involves a deviation by explicit departure from the agreed course. I allude to the case of Souter v. Baymore, 7 Pa. 415, 47 Am. Dec. 518. But the authority of that case is much weakened by the circumstance that, soon after the suit was brought in the state court, another was instituted in the federal court under the title of Knox v. The Ninetta, cited above, where it was held, as has been shown, that the carrier became an insurer, and the ship was liable for any subsequent loss. In the course of his discussion of the cases holding pro and con as it concerns the liability of the carrier where his unnecessary delay has contributed, though remotely, to the injury, Mr. Hutchinson has this further to say (section 301):

"Nothing is better settled than that in case of an unnecessary deviation the carrier will be liable, no matter what the immediate cause of the loss may have been, because the law will trace the loss back to the first fault and will there fix the liability for it, even though the immediate cause may have been some violent and unavoidable change or convulsion in nature. In other words, whenever the carrier attempts to evade responsibility for the loss by charging it to such a cause, he can be successfully met by showing the deviation. And it is difficult to understand why, if he is liable for a loss or injury in case of an unnecessary deviation, he should be excused where he has neglected to send the goods forward with reasonable dispatch. In either case there is a failure to comply with an obligation imposed by the contract of carriage, and it would seem that the same degree of responsibility should attach."

Notwithstanding the divergence of authority as it relates to the effect of an unnecessary delay, there is, so far as I am at present advised, a unanimity of authority as applied to a deviation involving a clear departure from the proposed route of carriage. In either case there is a breach of the contract of carriage. One is a breach rather of omission, and the other is of commission. The one is a delinquency suffered; the other a positive violation by doing something else than that which was stipulated should be done. The wrong "ensuing" therefor in the latter instance is positive in character, and, while the party violating his contract is so in the wrong, he will not be heard to say that his wrongful act is not a contributing cause to the injury sustained, when, if he had not committed the act, the injury would not have ensued. And it seems to me more consonant with justice that the carrier who contracts to carry by a particular route, but notwith-

standing proceeds to carry by another and totally different route, should stand responsible for any loss sustained to the cargo that would not have been sustained had it not been for the deviation, whether the immediate cause of the loss was the act of God or some cause excepted against in the contract itself. It does not seem right that the shipper should lose in such an exigency. He is in no default, he is perfectly innocent of any breach of the contract; while, on the other hand, had it not been for the wrongful carriage of his goods by another route, no loss would have been sustained. Should the shipper lose, or the one who committed the wrong? It seems but reasonable and just that the latter should sustain the loss. If it were a case where neither party was at fault, then the loss would fall upon the owner. There would then be in reality a loss without a wrong, and very naturally no relief could be had on account thereof.

Such being the law, it is nevertheless strenuously insisted that the carrier is relieved from liability by operation of sections 4282 and 4283 of the Revised Statutes of the United States. These sections have received ample construction, and have become well understood. The first exempts the owner from liability for any damage or loss occasioned by fire, unless it was caused by the design or neglect of the owner. Its application renders the owner liable for his personal acts only, not for the acts or negligence of his agents or employés. There must be personal participation in the act of delinquency or omission leading to the loss. The latter section restricts the liability of the owner to the value of his interest in the vessel where the damage is occasioned without the knowledge or privity of such owner. The loss might happen by the neglect, not by the design of the owner, and yet not be occasioned by his knowledge or privity; negligence being of a broader scope than actual knowledge or privity. Such is the judicial construction of these sections. Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038; Craig v. Continental Insurance Co., 141 U. S. 638, 12 Sup. Ct. 97, 35 L. Ed. 886; La Bourgogne, 210 U. S. 95, 120, 28 Sup. Ct. 664, 52 L. Ed. 973.

Libelant avers that the steamship Indrapura was, by order and direction of said owners and managing owner, and with the full knowledge and consent of the Portland & Asiatic Steamship Company, and without maritime necessity therefor, placed in dry dock. This is tantamount to an averment that the deviation—the docking being equivalent thereto—was made with the knowledge and privity of the owners of the Indrapura. Where the carrier, however, has thus deviated, being at fault, he becomes an insurer of the cargo which he has undertaken to carry, and, if any loss arises by reason of the fault, he cannot claim the benefit of the statute. Davis v. Garrett, supra, determines the case by analogy. There the parties by stipulation exempted the carrier from loss by fire, but the court refused to give the stipulation effect, seeing that the carrier was in the wrong. The language of Randall, District Judge, in Knox v. The Ninetta, supra, is very explicit to the same purpose. I repeat it here:

"I think [says the learned judge] the party who violates such a contract, and takes in additional cargo, without the consent of the first shipper, as-

sumes the risk and responsibility of an insurer, and should be liable for any loss that may afterwards occur."

So it is said by Andrews, Judge, in Maghee v. Camden & Amboy R. R. Co., 45 N. Y. 514, 522, 6 Am. Rep. 124:

"When a carrier accepts goods to be carried with a direction on the part of the owner, to carry them in a particular way, or by a specified route, he is bound to obey such direction; and, if he attempts to perform his contract in a manner different from his undertaking, he becomes an insurer, and cannot avail himself of any exceptions in the contract."

The legal effect of these sections of the Revised Statutes is to read them into all contracts of affreightment, so that they become part and parcel of such contracts. But it was not intended, I presume, that they should be the more operative while the carrier is in fault than a stipulation of the parties themselves to the same effect. So that the respondent being in fault by a purposeful deviation, he is not in a position to invoke the benefit of the statute. The ordinary rule holds the carrier responsible for injury or loss during carriage, and he is only exempt when he can show that the loss or injury was caused by the act of God. But, if he is himself in fault, when the loss ensues, he cannot even claim this exemption; and the case cannot be made stronger by the statute declaring the exemption from loss by fire where it is not attributable to the carrier's personal negligence. In this view of the case, it would seem that the respondent is liable under the allegations of the libel. There was a deviation, and while the respondent was purposely at fault the fire occurred. If it can be shown that the fire would have occurred notwithstanding the deviation, this would be a defense. But the burden is cast upon the respondent to maintain that defense; or, in other words, respondent must show that his fault was not a contributing cause to the loss by fire. The principle is aptly stated by the authors of 7 American & English Encyclopedia of Law, pp. 207, 208:

"It is the duty of the owner of a vessel, whether a general ship or one chartered for the special purpose of a particular voyage, to proceed, without unnecessary deviation, in the course designated by the contract, or, if no particular course is designated, in the course customarily taken by vessels making the designated voyage; and the general rule is that for any loss sustained during an unnecessary deviation the owner of the cargo may recover commensurate damages. * * * It having been shown that a deviation was made, and that a loss occurred during such deviation, or, it seems, thereafter on the voyage, the presumption arises that such loss was caused by the deviation, and the shipowner to escape liability must show that the loss not only might have happened, but must have happened, although the deviation had not been made."

It follows from these considerations that the exceptions to the libel must be overruled.