The Peoria and Pekin Union Railway Company, Appellant, *vs.* Corning & Co., Appellee.

*Opinion filed February 17, 1915.*

1. Railroads—*State has exclusive jurisdiction over commerce within its borders.* Congress may exercise exclusive jurisdiction over inter-State commerce, and having done so, the regulations supersede all regulation by the State; but the State has exclusive jurisdiction over commerce within its borders, and each is independent of the other within its legitimate sphere.

2. Same—*when contract for switching service will be enforced as to State commerce.* A contract between a terminal railroad company and a customer, based upon good consideration, fixing a maximum switching charge of one dollar a car, is valid and binding as to switching service wholly within the State and which is in no way a part' of inter-State commerce, even though, as to inter-State commerce, the contract cannot be enforced because the company has adopted a switching tariff of two dollars per car, established by a freight committee of which the company is a member.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. L. D. Puterbaugh, Judge, presiding.

Stevens, Miller & Elliott, for appellant.

Evans & Evans, for appellee.

Mr. Chief Justice Cartwright delivered the opinion of the court:

The appellant, the Peoria and Pekin Union Railway Company, brought this action in assumpsit in the circuit court of Peoria county against the appellee, Corning & Co., to recover $9484 alleged to be due for switching service furnished the appellee. The defendant pleaded the general issue, and a jury having been waived there was a trial by the court. The dispute at the trial was whether the plaintiff was entitled to two dollars for each car switched, as

claimed by it, or to one dollar, as insisted upon by the defendant, and it was agreed that the plaintiff might cash checks which had been tendered to it by the defendant at the rate of one dollar per car, to the amount of $4742, without prejudice to the claim for a balance of the same amount. The court found the issues for the plaintiff and assessed the damages at $485.45, and rendered judgment for that amount, with costs of suit. The plaintiff appealed to the Appellate Court for the Second District, and that court affirmed the judgment and granted a certificate of importance and an appeal to this court.

The plaintiff is a railroad corporation organized under the general act for the incorporation of railroad companies. It has extensive switching yards in Peoria and does an extensive terminal and switching business, doing the switching service for most of the railroads entering the city of Peoria, all but one of which extend into other States. The plaintiff's property and business are confined to Peoria, with a line to the neighboring city of Pekin. The defendant is a corporation engaged in the business of distilling, rectifying and selling alcohol and whisky, and it makes shipments to places within the State and to various points in other States and countries. It is the successor and assign of a partnership known as Corning & Co. and of the Monarch Distilling Company. On September 14, 1881, the Monarch Distilling Company conveyed to the plaintiff a tract of land in the city of Peoria in consideration of $12,912, and the deed recited that it was made concurrently with, and to be construed with, a written contract of the same date. By that contract the plaintiff agreed with the Monarch Distilling Company and Corning & Co., (the corporation and partnership composed of the same individuals,) in consideration of the conveyance to the plaintiff and a conveyance to the city of Peoria for a street, that it would do all switching of cars for said companies to and from their respective places of business at as low a rate as a like service

should be performed for any other business in Peoria, except to the elevators and stock yards, and in no case was the charge for such switching to exceed one dollar for each loaded car.   The plaintiff took possession of the land conveyed to it and covered it with its switching yards and tracks and used it in its business and treated the contract as a binding, valid and subsisting contract with the defendant, which succeeded the Monarch Distilling Company and the partnership of Corning & Co., up to November 15, 1907.   On September 27, 1907, the plaintiff gave notice to the defendant that on and after November 15, 1907, it would demand two dollars per car for switching service for the defendant.   The reason given for refusing to further perform the contract was that a freight committee, to which the plaintiff was a party, had established a switching tariff, effective November 15, 1907, of two dollars per car, and that under the Inter-State Commerce act the plaintiff had no right to charge any other or different rate than the duly published tariff rate.   From November 15, 1907, to July 31, 1911, the plaintiff had switched for the defendant 4742 cars and rendered bills at the rate of two dollars per car, in accordance with the terms of the published switching tariff, and it was for this switching that the suit was brought. When the defendant had received the bills, from time to time, it had refused to pay at the rate of two dollars per car and tendered the plaintiff checks for the cars switched at the rate of one dollar per car.   The checks were refused by the plaintiff, which held them with notice that they were held at the defendant's risk and would not be credited in payment of the switching charges, except on account and not in full settlement.   These are the checks which it was agreed upon the trial the plaintiff might, and did, collect. Of the 4742 cars switched, 4179 were switched between the distillery and the rectifying house of defendant in Peoria and were no part or parcel of any inter-State shipment. Practically all of them were switched from the distillery to

the rectifying house, and all were unloaded where delivered in the ordinary course of the business of the defendant. The remaining 563 cars were switched from the rectifying house of the defendant to the freight house of the plaintiff for distribution to railroads leading out of Peoria, to various points within and without the State of Illinois. The plaintiff maintained a union freight house for the benefit of all roads coming into Peoria, and all freight less than car-load shipments from the different railroads, except two, was brought to that freight house. The defendant would load a car at its rectifying house with various packages to be shipped, marked with the name of the consignee and the point of destination, and would give the plaintiff a switching order on what was known as "form 200," for each car containing shipments to be forwarded from Peoria. The defendant made out bills of lading in triplicate covering each of the packages and delivered the bills of lading to the plaintiff when the car containing the packages was delivered to it. When the car reached the freight house the various packages were distributed by employees of plaintiff to the various out-going roads, and the plaintiff would then sign the various bills of lading in the name of the agent of the out-going road and deliver one copy to the out-going road, returning the other two to the defendant. The defendant would retain one copy and forward the other to the consignee. Only cars containing package shipments were taken to the freight house and full car-loads were forwarded direct from the rectifying house to the out-going road, and the switching charges were absorbed by such road and are not involved in this suit. In the case of cars loaded with packages, the switching charge was to be paid by the defendant and was not absorbed by any of the out-going roads, except where the amount carried by any one road in one load was 6000 pounds or more. Of the 563 cars switched from the rectifying house to the freight house, eighty-five per cent contained packages go-

ing out of the State together with packages to be delivered within the State. The remaining fifteen per cent contained only packages consigned to places within the State.

The court held, on propositions of law submitted by the parties, that the plaintiff was only entitled to a switching charge of one dollar per car for switching service between the distillery and the rectifying house in which the cars were loaded at one house and unloaded at the other, and that the Inter-State Commerce act did not interfere with or prevent the performance of the contract as to switching service wholly within the State which was no part of a continuous shipment to any point outside of the State, and refused to hold that the plaintiff had the right, and it was its duty under the law, to charge and collect two dollars per car for all switching service notwithstanding the contract, and that the plaintiff could not legally switch cars for the defendant at a less rate than that stated in the switching tariff of two dollars per car. The court, applying the legal principles held in the propositions of law, decided that as to all cars containing inter-State shipments switched between the rectifying house and the freight house for delivery to out-going roads the rate named in the switching tariff should govern and defendant should be compelled to pay the two dollars per car, but as to all switching between the distillery and the rectifying house, all cars containing only shipments to points within this State, the contract rate of one dollar per car should apply. The damages assessed and the judgment entered were based on that decision.

There is no controversy over the rule of law that the Inter-State Commerce act prevented the further performance of the contract to do switching for one dollar per car in inter-State commerce, and it is conceded that it was the duty of plaintiff and defendant to comply with the legally established and published switching tariff, irrespective of any contract to the contrary, so far as inter-State transportation was concerned. The court held and applied the law

as claimed by the plaintiff, to every car switched which contained a package to be transported beyond the boundaries of the State although it also contained packages to be delivered within the State. It held the contract valid and binding as to the switching of cars in no way connected with inter-State commerce or any inter-State shipments. The error assigned is, that the court refused to hold that all movements in switching service between the distillery and rectifying house where cars were unloaded at their destination and were no part of an inter-State shipment, and all cars switched from the rectifying house to the freight house containing packages none of which were to be shipped out of the State, were governed by the published tariff rate for inter-State commerce and could only be switched at that rate.

Counsel are correct in saying that through billing is not necessarily determinative whether a shipment is an inter-State shipment or not, and the fact that plaintiff's road does not extend beyond the State does not determine that the service performed by it may not be inter-State commerce, but neither proposition can affect this case, in which there was no question of through billing or of goods being started in the course of transportation to another State. The substantial argument that the court erred in holding that the Inter-State Commerce act did not prevent the performance of the contract in matters having no connection with inter-State commerce is, that by giving a lower rate for switching service in that part of defendant's business not connected with inter-State commerce an advantage would be given to the defendant in inter-State commerce over other shippers. Plainly, that is not true, for the reason that in all cases where cars contained any package consigned to a point outside of the State the court allowed the inter-State tariff rate, so that all persons, as to each and every inter-State shipment, were placed upon an absolute and perfect equality. There is a sense, of course, in which the lower rate on a

part of the defendant's business affects the total income of the defendant from its entire business, consisting of that which is inter-State and within the jurisdiction of Congress, and that which is wholly within this State and over which Congress has no jurisdiction. It cannot be denied that if the expenses of the defendant's entire business are less the profits will be greater, but Congress has no more concern with transportation wholly within the State, not connected in any way with inter-State commerce, than it has with any other expense of the defendant's business. Precisely the same course of reasoning presented here would lead to a conclusion that Congress cannot lawfully regulate rates of inter-State commerce, which is within its exclusive jurisdiction, because the rate fixed would affect the total income of a shipper derived from inter-State commerce, and also from commerce within the State, over which Congress has no jurisdiction. Congress may exercise exclusive jurisdiction over inter-State commerce, and having done so, the regulations supersede all regulation by the State, but the State has exclusive jurisdiction over commerce within its borders and each is independent of the other within its legitimate sphere. The court did not err in deciding the questions of law involved.

It is argued that the contract did not, by its terms, apply to the loaded cars switched between the distillery and the rectifying house; but not only did the plaintiff interpret the contract as including such switching for many years, but it came within the terms of the contract which applied to the switching and business of the defendant.

It is also contended that the contract was illegal under the State law which prohibited unjust discrimination in rates. There was no evidence tending in any degree to show any unjust discrimination or favoritism toward the defendant, and the contract was based upon a good consideration, consisting of the conveyance of property to the plaintiff, and deemed by it adequate compensation for its

agreement. The act to provide for the regulation of public utilities, approved June 30, 1913, was not in force during the period when the switching was done, which was before July 31, 1911. Its provisions, therefore, could have no influence upon the rights of the parties.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*