## A. B. Dean, Appellee, v. Belt Railway Company of Chicago and Chesapeake & Ohio Railway Company of Indiana, Appellants.

### Gen. No. 23,241.

1. CARRIERS, § 114*—*when flood is proximate cause of injury to tobacco.* The proximate cause of the loss of tobacco in the hands of a terminal carrier was due to an act of God, a flood, where the flood was one that could not have reasonably been anticipated, it having covered the railroad yards, which had not happened in previous floods, and any efforts to avoid loss would have been unavailing after the disaster could have been foreseen, even though there was a delay by an intermediate carrier in transferring the car from the tracks of the initial carrier to the terminal carrier and by the terminal carrier in reaching the place where the accident occurred, owing to washouts.

2. CARRIERS, § 30*—*what law governs liability of terminal carrier for loss of interstate shipment of goods.* The liability of a terminal carrier for the negligent loss of an interstate shipment of goods is governed by the federal rules.

3. CARRIERS, § 30*—*what is effect of Carmack Amendment to Interstate Commerce Act.* Since the passage of the Carmack Amendment to the Interstate Commerce Act the special regulations and policies of particular States upon the subject of a carrier's liability for loss or damage to interstate shipments, and the contracts of carriers with respect thereto, have been superseded.

4. CARRIERS, § 114*—*when terminal carrier excused from liability for loss of goods by flood.* Where the uniform bill of lading for an interstate shipment of tobacco provides that "no carrier or party in possession of any of the property herein described shall be liable for any loss thereof, or damage hereto or delay caused by the act of God," and the proximate cause of damage to the tobacco in the hands of the terminal carrier is an act of God, an unprecedented flood in the company's yards, the carrier is excused from liability even though its own negligence or delay may have contributed to the loss or damage as a remote cause thereof.

Appeal from the Municipal Court of Chicago; the Hon. JOSEPH P. RAFFERTY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1917. Reversed with finding of fact. Opinion filed April 16, 1918.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

C. G. AUSTIN, JR., BEVERLY W. HOWE and WORTH E. CAYLOR, for appellants.

DARROW & SISSMAN, for appellee; T. C. SPARKS, of counsel.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Appellee brought this suit to recover damages for the loss of a shipment of tobacco, billed under a uniform bill of lading from Newmarket, Missouri, for delivery at Lexington, Kentucky, charging that the loss ensued from the negligence of the defendants and each of them. There was a verdict of not guilty for the initial carrier, and a verdict assessing damages in the sum of $3,214.80 in tort against appellants, who were intervening carriers. The immediate cause of the loss was a flood.

For convenience we will refer to the two appellants as the Belt Ry. and the C. & O. Ry., respectively. The statement of claim charges negligence in general terms. The specific negligence relied on as to the Belt Ry. was delay in transferring the car containing the tobacco to the C. & O. Ry., and, as to the latter, delay and failure to move the car from the region of the flood. The car was delivered by the initial carrier to the Belt Ry. about noon, March 21, 1913, and by the latter to the C. & O. Ry. at 7:30 p. m. March 23rd. The car left on the latter company's tracks about 5 hours later on the first regular train going south, and, meeting with some delay on account of washouts, reached Peru, Indiana, 100 miles distant, at 7:35 a. m. March 24th, where on that night the company's railroad yards, tracks and offices became flooded to the depth of several feet from the overflow of the Wabash River, due to an extraordinary and continuous rain that began on the 23rd.

Whatever delay ensued on the road of the latter

company prior to the time the car reached Peru was the result of washouts from the rains. Peru was a divisional point. It was customary to detach the engine and, leave the cars in the yards there until a freight train was made up for the east. While that was done shortly after the arrival of the car in question, conditions were such it could not be run out. A passenger train which left Peru for the east that afternoon was obliged to return on account of floods and washouts. In the course of the night the waters rose rapidly and left the banks of the Wabash River, flooding the railroad yards, streets of Peru and surrounding country. Persons who had lived in Peru for over 30 years had never known the river to rise high enough before to cover the tracks in the railroad yard. The conditions and results were unprecedented and unexpected. Both passenger and freight traffic became paralyzed. No trains moved out of Peru until the 29th. When the water subsided sufficiently to move freight cars in the yard the car in question was one of the first to be moved. The tobacco was then so injured that the salvage was only about $180, leaving, after payment of freight charges, $32.10 in the hands of the C. & O. Ry., which it offered to pay to the plaintiff.

The evidence is overwhelming to the effect that such an event could not reasonably have been anticipated, and that any efforts to avoid loss would have been unavailing after such disaster could, so far as the circumstances disclose, have been foreseen. Unquestionably the proximate cause of the loss was the flood, an act of God.

It being an interstate shipment, the question of liability is governed by the federal and not state rules, though the court below ruled to the contrary. Nearly all the points of this case are covered in our opinion in a similar case, *Ohio Salt Co. v. Baltimore & O. Ry. Co.*, abstracted in 204 Ill. App. 376. There, as here,

the plaintiff relied upon the rule applicable in this State to intrastate commerce, that where the negligence of the carrier is a contributing cause of the damage, it cannot escape responsibility, notwithstanding the act of God, and that delay may concur as such cause, citing *Wald v. Pittsburg, C., C. & St. L. R. Co.,* 162 Ill. 545. But, as we there said, even if the facts justify holding the company negligent by reason of delay, still, it being an interstate shipment, the rule of liability laid down in the federal courts must govern, for since the passage of the Carmack Amendment to the Interstate Commerce Act, "the special regulations and policies of particular States upon the subject of a carrier's liability for loss or damage to interstate shipments, and the contracts of carriers with respect thereto, have been superseded." (*Charleston & W. C. Ry. Co. v. Varnville Furniture Co.,* 237 U. S. 597; *Adams Exp. Co. v. Croninger,* 226 U. S. 491; *Gamble-Robinson Commission Co. v. Union Pac. R. Co.,* 262 Ill. 400; *Peoria & P. U. Ry. Co. v. Corning & Co.,* 266 Ill. 515.) As said in *Cincinnati, N. O. & T. P. Ry. Co. v. Rankin,* 241 U. S. 319, 326: "The shipment being interstate, rights and liabilities of the parties depend upon acts of Congress, the bill of lading and common-law rules as accepted and applied in federal tribunals."

The uniform bill of lading under which the shipment here moved provided "no carrier or party in possession of any of the property herein described shall be liable for any loss thereof, or damage hereto or delay caused by the act of God." The federal rule of liability where the carrier seeks to be excused for nondelivery of goods caused by the act of God as held in *Memphis & C. R. Co. v. Reeves,* 77 U. S. 176, may be stated as follows: Where the proximate cause of damage to goods in the hands of the carrier is an act of God the carrier is excused from liability, although his own negligence or delay may have contributed to the loss

or damage as a remote cause thereof. (See *St. Louis, I. M. & S. Ry. Co. v. Commercial Union Ins. Co.,* 139 U. S. 223; *The Indrapura,* 171 Fed. 929, and *Empire State Cattle Co. v. Atchison, T. & S. F. R. Co.,* 135 Fed. 135.)

What was said in the last cited case, that "the direct and proximate cause of the loss and damage was the unprecedented and unexpected flood and attendant disaster that came wholly without anticipation on the part of the defendant company," is applicable here, and on such facts the authorities cited govern.

The court, therefore, erred in disregarding the federal rule as to liability and in not directing a verdict for appellants. Its judgment will be reversed with a finding of fact, and a judgment will be entered here against the Chesapeake & Ohio Railway Company of Indiana, for $32.10, without costs in this case.

*Reversed with finding of fact and judgment against the Chesapeake & Ohio Railway Company of Indiana for $32.10.*