## W. A. LIGHTER & CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

District Court, E. D. Louisiana. February 29, 1928.

No. 16830.

1. Shipping ☞118—Time for computing delay in delivery of cargo held not to begin to run until completion of loading.

Where cargo was delivered to ship's agent to be laden in an expected steamship, no time being specified, and a custody bill of lading taken, which allows three weeks for actual loading, and the loading was done without objection by shipper, time for computing delay in delivery did not begin to run until loading was completed.

2. Shipping ☞118—Where no time is specified in contract of carriage, there is implied warranty that delivery will be made within reasonable time.

Where no time is specified in a contract for carriage by sea, there is an implied warranty that an efficient vessel will be provided and delivery made within a reasonable time, unless excused on some lawful ground.

3. Shipping ☞141(1)—Under bill of lading, shipowner held not liable for delay in delivery of cargo caused by machinists' strike while making necessary repairs.

Where a ship was seaworthy when she sailed for the loading port to receive a transatlantic cargo, but developed engine trouble on the way, which made repairs necessary before commencing the voyage, and such repairs were promptly commenced at loading port, but delayed after cargo was loaded by a general machinists' strike, the shipowner held not liable for a consequent delay in delivery of the cargo, under a provision of the bill of lading exempting it from liability for delays not reasonably avoidable or caused by strikes.

In Admiralty. Suit by W. A. Lighter & Co. against the United States Shipping Board Emergency Fleet Corporation. Decree for respondent.

Morris B. Redmann (of Merrick, Schwarz, Guste, Barnett & Redmann), of New Orleans, La., for libelant.

E. F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., of New Orleans, La.

BURNS, District Judge. Libelant claims damages for unreasonable delay on 200 bales of cotton destined from New Orleans to Bremen. By a written contract of affreightment, dated March 29, 1920, the Steele Steamship Line, as operating agent for the United States Shipping Board Emergency Fleet Corporation, agreed to move the cotton by the steamship West Zucker or substitute; "delivery to suit steamer expected middle April."

[1] On April 30th libelant delivered the cotton to the ship's agent, taking a custody bill of lading on the Liverpool Conference form, reciting that the cargo had been received for shipment from Parker, Moore & Co., to be transported by the steamer Newburgh or other steamer, stipulating no time. The Newburgh arrived at New Orleans May 5th, and began loading cargo. Simultaneously she also commenced engine room repairs, necessity for which had arisen en route from Norfolk to New Orleans. She was otherwise seaworthy. Cargo loading was completed May 25th, but the repairs were incomplete, and on May 26th, because of a general strike of the machinists in New Orleans, the vessel laid up until July 19th, when repairing was resumed and completed. She sailed August 2d, arriving at Bremen August 26th.

The actual time lost should be computed from the date the cargo was laden, and not, as libelant contends, from the date of the contract. The actual delay was some 60

days, and not 4 months. The contract or freight engagement did not stipulate for a specific date of arrival for the steamer to take the cargo, nor for a date of delivery in Bremen. Moreover, in anticipation of its arrival on May 6th or 7th, the libelant did not protest or complain, but, on the contrary, delivered the cargo to the agent as aforesaid on April 30th, accepting a custody bill of lading, which issues before a vessel arrives in port and allows 3 weeks for actual shipment on board, so that no cause of complaint arose actually until the full cargo was loaded. There was no other delay in port during the loading, except that 2 or 3 days were lost restowing some of the cargo on account of a change in the order of calling at foreign ports. All of the delay subsequent to May 25th was due directly to the machinists' strike, which lasted some 55 days, and which, plus the 13 days consumed in finishing repairs, made a total of some 68 days, or a little more than 2 months. If the Newburgh had sailed on May 26th, she would have arrived in Bremen about June 20th, instead of arriving, as she did, on August 26th, when she had consumed 24 days, or about the usual time, in transit.

[2] It is settled law that, where no time is specified in a contract for carriage by sea, there is an implied obligation or warranty that the shipowner will make delivery within a reasonable time, measured by the period of transit, and also that his obligation is to provide a vessel to perform that contract within a reasonable time. He is liable in damages for a failure to do so, unless excused by some term of his contract or some principle of law. Robert Cohn et al. v. U. S. Shipping Board Emergency Fleet Corporation (C. C. A.) 20 F.(2d) 56; The Gordon Campbell (D. C.) 141 F. 435; The Indrapura (D. C.) 171 F. 929; The Prussia (D. C.) 100 F. 484.

[3] The evidence in this case shows, as already stated, that the Newburgh left Norfolk in a seaworthy condition, but that engine trouble developed en route to New Orleans, such as necessitated repairs before she could commence the contemplated voyage from New Orleans to Bremen; the duty being imposed upon the owner by implication under the contract for carriage by sea to put her engine and machinery in efficient, seaworthy condition before beginning a voyage. The Caledonia, 157 U. S. 125, 15 S. Ct. 537, 39 L. Ed. 644.

The evidence further shows that these necessary repairs could have been made

while the vessel was loading cargo in port; that they were diligently undertaken, and could have been finished with little, if any, delay had the strike of the machinists not occurred; that the cotton had already been loaded when the strike began; that the ship could not be moved to another port for repairs, nor could the cotton be unladened and reshipped, because of threatened sympathetic strikes by machinists in other Gulf ports, and also by the longshoremen here; so that the shipowner was helpless under the circumstances, and guilty of no negligence, even though the repairs were undertaken with knowledge of an impending strike.

The question for decision, therefore, is whether or not the exceptions in the contract of carriage protect the shipowner against the delay which resulted directly from the strike. The pertinent clause in the contract of affreightment is as follows: "This contract is made upon the express conditions that it is subject to all the clauses and conditions in the ocean bill of lading used by the particular vessel on which the goods go forward, which bill of lading is made a part of this contract, and copy of same bill will be furnished on application."

The original bill of lading contained the following: "Also that the shipowner shall not be held responsible for loss, damage, or delay, wheresoever occurring, caused directly or indirectly by reasonably unavoidable delay of the vessel to repair or renew hull or machinery, or by riots, strikes, lockouts, labor disputes or disturbances of any kind, or by any reasonable course of action adopted by the shipowners or other person whomsoever in contemplation or consequence thereof or in connection therewith."

Considering this exception in the bill of lading, in view of the fact that the contract contemplated a reasonable time of delivery, and not a specified delivery, or a delivery for a particular market, where a loss might be occasioned by a decline in the market value of the goods, it is my conclusion that the shipper would not be entitled to damages for a loss in consequence of a decline in the market price of the goods between any reasonable expected date and the actual date of arrival at destination, even though the repairs had not been attempted before commencing the voyage, because, under the exception which gave the right to the shipowner to have stopped for such repairs to the machinery after the voyage had commenced, the shipowner would have been within its rights, had there occurred any

reasonably unavoidable delay to the vessel to repair or renew hull or machinery, etc., after the voyage had commenced.

Moreover, by the terms of the same instrument, the rights were reserved to the vessel to proceed to Bremen in any order of rotation, outwards or forwards, whether in or out of, or in a contrary direction to or beyond, the customary or advertised route, once or oftener, without the same being deemed a deviation, etc., in which respect the situation is very similar to that presented in the Neshaminy Case, 290 F. 358, where the Circuit Court of Appeals, Fifth Circuit, held that the shipper was not entitled to have goods carried promptly and directly by steamer, and was not entitled to recover damages by reason of decline in the market value of timber during the shipment.

I find that the libelee did everything which prudent management required to expedite the sailing of the Newburgh, and was prevented and delayed directly by the machinists' strike; that this delay was of the reasonably unavoidable character necessary for the repair of the ship, resulting from a strike and labor dispute or disturbance, such as did bring the shipowner within the protection of the reserved exception contained in the bill of lading.

This conclusion seems fortified by the fact that the failure to receive the original sale price of the cotton—i. e., $43,421.46—did not result directly from the delay of delivery beyond an expected date of arrival, but resulted rather from the fact that the shippers, Parker, Moore & Co., had become insolvent, as a result of which their guaranty as to grade, weight, etc., was without value. The record shows that Paul Schmitz & Co., consignees of the cotton, invoked the Arbitration Board of the Bremen Cotton Exchange, and that tribunal held that Schmitz & Co. was not compelled to take the cotton at the contract price because of the insolvency of Parker, Moore & Co., and this decision was affirmed on appeal to the Court of Appeal of the Bremen Cotton Exchange. Nowhere in the whole of that proceeding was the delay in the delivery by the vessel mentioned as a cause of refusal. However, in view of the contract, and particularly the clause containing the exceptions above referred to, I am of the opinion that the contract sued on did not entitle the appellee to have the goods carried promptly and directly to Bremen, nor was a particular market contemplated by the contract, and that the shipper is not entitled to damages for a failure to get the benefit of a service for which it

did not contract, whereas the shipowner was and is entitled to the benefit of the exemption stipulated by the contract in its favor quoad the delay resulting from the strike.

Accordingly a decree may be entered in favor of the defendants, dismissing plaintiff's libel, at its cost.