### ISBRANDTSEN CO., Inc. v. FEDERAL INS. CO. et al.

United States District Court
S. D. New York.
Oct. 28, 1952.

Lord, Day & Lord, New York City, proctors for libellant. James S. Hemingway, John W. Castles, III, New York City, advocates.

Bigham, Englar, Jones & Houston, New York City, proctors for respondents. Henry N. Longley, F. Herbert Prem, New York City, advocates.

CLANCY, District Judge.

The libel in this action to recover the cargo's proportionate share of the expenses necessarily incurred in refloating and temporarily repairing the vessel The John Miller alleges that the libellant, the demise charterer of the vessel, contracted to carry freight from the Hawaiian Islands to Piraeus, Greece; that the cargo was taken aboard; that there is no custom house at Pearl Harbor where the ship originally berthed; that before clearance her berth was desired by the Navy and on June 19, 1946 she proceeded to the Honolulu Anchorage Ground seven miles away intending to anchor there pending clearance; that she never left the customs district of Honlulu but stranded off Honolulu. The libel continues that the libellant was not responsible for the expenses necessarily incurred in refloating and temporarily repairing the vessel arising out of the stranding but that the stranding was due solely to the neglect or default of the master or the servants of the libellant in the navigation of the ship. Respondent has excepted to the libel on the ground that it does not state a cause of action since it alleges the stranding of The John Miller occurred when the vessel had not cleared customs at Honolulu and therefore before the commencement of its voyage.

The contract of affreightment contained a typewritten clause which made the clause paramount and the amended Jason clause superior to any apparent inconsistency in the rest of the agreement. The clause paramount subjected the entire contract to the provisions of the Carriage of Goods by Sea Act thereby incorporated. The amended Jason clause reads: "In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the shipowner is not responsible, by statute or contract or otherwise, the shippers, consignees or owners of the cargo shall contribute with the shipowner in general average * * *." Thus the respondent's liability depends on the determination of the liability of the shipowner if any to cargo for negligent navigation which admittedly caused the stranding.

The exemption of the carrier and ship for loss or damage arising or resulting from neglect or default of the master, mariner, pilot or servant of the carrier in the navigation or management of the ship is unconditioned in the Carriage of Goods by Sea Act. 46 U.S.C.A. § 1304(2) (a). That act exempts the carrier and the ship from liability and damage caused by unseaworthiness as well unless that unseaworthiness is caused by the want of due diligence on the part of the carrier to make the ship seaworthy. § 1304(1). There is no such saving clause in the exemption provided by § 1304(2) (a). The Harter Act, 46 U.S.C.A. § 192, on the contrary makes due diligence to secure seaworthiness a condition to the enjoyment of all the exemptions of the ship and its owner from responsibility for damage recited in that section. Since seaworthiness is always determined at the time the voyage commences, The Willdomino, 3 Cir., 300 F. 5; The Southwark, 191 U.S. 1, 24 S.Ct. 1, 48 L.Ed. 65, the diligence of a vessel owner to make the ship seaworthy was

359

relevant only to securing the advantages of § 3 of that Act in the event of loss after such voyage commencement. 46 U.S.C.A. § 192; Ralli v. N. Y. & T. S. S. Co., 2 Cir., 154 F. 286; American Agricultural Chemical Co. v. O'Donnell Transp. Co., D.C., 62 F.Supp. 230. But nothing in the language of the Carriage of Goods by Sea Act requires proof of seaworthiness to make available to the owner the exceptions listed in § 4(2). That Act, under § 3, 46 U.S. C.A. § 1303 (1) (a) does bind the carrier to exercise due diligence to make the ship worthy but the enjoyment of the stipulated exceptions to its liability is not conditioned on a breach of that duty except where breach of it is the cause of the loss. If unseaworthiness were the cause, the exceptions in § 4(2) would not be involved in the claim. We cannot find the materiality of the decisions giving like definition to the phrase "due diligence" in both statutes or to the decisions barring relief under the Harter Act to vessels in difficulty before entering on their voyages.

Respondent's exception is overruled.