**INDIA SUPPLY MISSION, on behalf of the Republic of India, Plaintiff,**

v.

**S. S. VALIANT EFFORT, her engines, boilers, etc.**

v.

**EFFORT STEAMSHIP CORPORATION, Inc., Ocean Carriers Corporation, Inc. and Transpollux Carriers Corporation, Defendants.**

**No. 197–211.**

United States District Court
S. D. New York.

Dec. 6, 1967.

Kelly, Donovan, Robinson & Maloof, James J. Donovan and John P. Conroy, New York City, for plaintiff.

Hill, Betts, Yamaoka, Freehill & Longcope, David C. Wood, Eugene F. Gilligan and Francis L. Gannon, New York City, for defendants.

CANNELLA, District Judge.

Action by plaintiff,[1] India Supply Mission, on behalf of the Republic of

[1]. The action was commenced by a libel on the admiralty side of the court. Since its commencement, changes in the admiralty rules have been adopted, resulting in changes of procedure and nomenclature.

India, for damages as the result of a cargo loss at sea, dismissed at the end of the entire case.

The court finds that it has jurisdiction of this admiralty action. 28 U.S.C. § 1333.

This action arose out of the stranding and subsequent total loss of the S.S. Valiant Effort near Bizerte, Tunisia on January 18, 1959, while on a voyage from Galveston, Texas, to Calcutta, India. Some time prior to December 23, 1958, the defendant Effort Steamship Corporation, Inc., an American Corporation with an office in New York, purchased the S.S. Valiant Effort and changed her registry from Panamanian to American. On or about December 18, 1958, the S.S. Valiant Effort arrived in Galveston, Texas, and commenced loading the plaintiff's cargo of 10,000 tons of wheat pursuant to a charter party entered into by the plaintiff and defendant on or about November 5, 1958. The vessel left Galveston on December 23, 1958 enroute to Calcutta, India. After bunkering at Ceuta, Spanish Morocco, on January 14, 1959, the vessel proceeded eastward through the Mediterranean until early in the morning of January 18, 1959, when, moving at full speed through rough waters, she struck a rocky reef, near the Canai Isle, heavily several times. The vessel and cargo were totally lost and plaintiff is seeking the value of the cargo.

■ Plaintiff's contention is that the vessel was unseaworthy in that she did not carry current charts of the area of her voyage and that the stranding on the Canai Isle was a direct result of this omission. The testimony of the watch officers and other credible evidence presented at trial demonstrated that the most current pilot charts and light lists were aboard the vessel and that there were also aboard both large and small scale charts of the area of the voyage which, although not new were kept up to date by use of the light lists. The credible evidence further demonstrated that the stranding was due to a miscalculation on the part of the watch officer, due to rough seas. The court therefore finds, based on all of the credible evidence presented at trial, that the vessel was properly equipped with charts for her voyage and that the stranding was due solely to a navigational error.

■ The charter party of November 5, 1958 is, by its terms, governed by the Carriage of Goods by Sea Act.[2] Under this Act once the carrier has brought forth evidence establishing the defense of error in management, the burden is on the shipper to show that the vessel was unseaworthy and that the damage was caused by such unseaworthiness. Firestone Synthetic Fibers Co. v. M/S Black Heron, 324 F.2d 835 (2 Cir. 1963). Thus when the defendant established that the incident occurred as a result of error in management, the burden shifted to the shipper to show that the vessel was unseaworthy.

The plaintiff in an attempt to meet the burden of demonstrating the unseaworthiness of the vessel and its causal connection with the damage, alleged the existence of a hole in the shaft alley bulkhead,[3] which destroyed the watertight integrity of the ship and resulted in her loss. This presented an issue of fact, i. e. whether or not the hole existed.

The members of the crew, including the chief engineer, who testified on behalf of the plaintiff, testified that after the vessel struck some object three times, the shaft alley filled with water. They further testified that the shaft alley door was closed immediately and that water began to pour through a hole in the shaft alley bulkhead at such a rapid rate that the pumps were unable to cope with it. However, it must be noted that there were several discrepancies as to

2. 46 U.S.C. §§ 1301–15.

3. The shaft alley is a tunnel leading from the stern of the ship, by the screw foreward, to the engine room. The shaft alley bulkhead is the watertight bulkhead separating the shaft alley from the engine room.

the location, size and shape of the hole and all of these witnesses also testified that they had never noticed the hole before the time of the accident.

On the other hand the Coast Guard inspectors who examined the ship in New York before the vessel was changed from Panamanian to United States registration on or about December 11, 1958, testified that they examined the shaft alley bulkhead and that there was no hole in it at that time. This examination was not a cursory one since there was a change from foreign registration to United States registration involved. Further, two of the oilers who were present in the engine room after the ship struck, testified that they did not see any hole in the bulkhead or water pouring therefrom. Finally, Stanley Mearns, a diver, testified that in April 1960 he made several dives and examined the shaft alley bulkhead of the Valiant Effort and determined that there was no hole in the bulkhead as described by the crew.

 The seaworthiness of a vessel is measured by her fitness in all respects to fulfill the purposes of the voyage when she breaks ground and begins her voyage. Union Carbide & Carbon Corp. v. The Walter Raleigh, 109 F.Supp. 781 (S.D.N.Y.1953); Isbrandtsen Co. v. Federal Insurance Co., 113 F.Supp. 357 (S.D.N.Y.1952), aff'd per curiam 205 F. 2d 679 (2 Cir.), cert. denied, 346 U.S. 866, 74 S.Ct. 106, 98 L.Ed. 377 (1953). There was no evidence of any hole in the shaft alley bulkhead at the commencement of the voyage. The Coast Guard inspectors in New York did not see any and the crew themselves did not see any until the accident. Such a finding would be conjecture. Further, the diver's testimony demonstrates that there was no hole in the bulkhead after the vessel had been stranded.[4]

Therefore, based on all of the credible evidence presented at the trial, this court finds that the plaintiff has failed to meet its burden of demonstrating the unseaworthiness of the vessel and its causal relation to the damage and the action is dismissed.

So ordered.

---

4. This element was important because the voyage commenced in Galveston, Texas and not New York where inspection took place.