**SAXONY PRODUCTS, INC.,**
Plaintiff-Appellee,

v.

**GUERLAIN, INC.,** Defendant-Appellant.

No. 73–1290.

United States Court of Appeals,
Ninth Circuit.

April 7, 1975.

Harold I. Kaplan (argued), New York City, for defendant-appellant.

Louis W. Shaffer (argued), of Stewart & Shaffer, Los Angeles, Cal., for plaintiff-appellee.

## OPINION

Before DUNIWAY and ELY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Defendant-appellant, Guerlain, Inc., appeals from an order granting the motion of plaintiff-appellee, Saxony Products, Inc., for summary judgment and holding that (1) the use of appellant's registered trademark SHALIMAR in appellee's advertising did not constitute trademark infringement and unfair competition, and (2) appellant was guilty of unfair competition by threatening appellee with legal action based on unfounded claims.

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

## I. BACKGROUND

Guerlain, a New York corporation and well known perfumer, is the owner of a trademark on the name SHALIMAR used in connection with unpatented perfumery products since 1926.[1] Saxony, a California corporation, produces toiletry items and distributes them throughout the United States.

Saxony produces and markets a line of toiletries called "LIKE COLOGNES" and "LIKE PERFUMES", which they advertise as being similar to high-priced colognes and perfumes identified as ARPEGE, CHANEL No. 5, ESTEE LAUDER, MY SIN, WHITE SHOULDERS, SHALIMAR, JOY and TABU. The Saxony product is sold for a fraction of the selling price of the cologne or perfume it simulates.[2]

In its advertising displays, Saxony lists the well known colognes and perfumes in one column and its own cologne or perfume of similar fragrance in a matching column. The Saxony "LIKE" products are denominated Fragrance A, Fragrance C, Fragrance E, Fragrance M, Fragrance W, and Fragrance S, the letter corresponding to the first letter of the name product it simulates. Thus, the "LIKE" cologne corresponding to SHALIMAR is called Fragrance S. The comparison charts recite that "If you Like" (the) "Famous Colognes", then "You'll love" (the) "Similar Colognes".

Tester bottles of the LIKE perfumes are provided by Saxony at each display so that purchasers may determine for themselves that the Saxony product has the scent they desire. Tester bottles of the colognes and perfumes allegedly being simulated, however, are not provided. Although the trademark names appear on the Saxony displays for purposes of identifying the nature of the LIKE colognes and perfumes, only the Saxony name appears on the labels of the boxes or bottles in which Saxony's products are sold. Most of the comparison charts, display bins, signs, labels, and boxes, prominently identify Saxony as the source of Fragrance S and all other LIKE toiletries.[3]

## II. PROCEEDINGS IN DISTRICT COURT

This controversy arose when Guerlain wrote a letter to F. W. Woolworth and Company, a customer of Saxony, stating that Saxony's LIKE cologne and perfume displays constituted an infringement of its trademark SHALIMAR and requesting that Woolworth remove the Saxony displays from its stores. Woolworth referred the letter to Saxony. Saxony replied to Guerlain's letter, asserting that the alleged trademark infringement was unfounded. When the matter could not be resolved, Saxony commenced this action, charging Guerlain with unfair competition by threatening one of Saxony's customers and seeking a declaratory judgment that Saxony was not infringing on Guerlain's trademark "SHALIMAR" and was not engaged in unfair competition against Guerlain through its advertising. In a counterclaim Guerlain alleged infringement of its trademark SHALIMAR, dilution and denigration of the trademark, misrepresentation, and unfair competition.

Saxony moved for summary judgment. Following three hearings, the motion was granted, and an order was entered declaring Saxony free of any infringement, unfair competition, dilution, or misrepresentation, adjudging Guerlain "guilty of unfair competition" by wrongfully threatening Saxony and its customer, and granting Saxony injunctive re-

1. In its counterclaim Guerlain charged Saxony with infringement of United States trademark registrations for SHALIMAR issued August 24, 1926 and August 19, 1969.

2. SHALIMAR cologne sells for $6.50 an ounce, while Fragrance S cologne sells at $1.00 for a 1.5 ounce bottle. SHALIMAR perfume sells for $27.50 per ounce, while Saxony's LIKE perfume sells at $2.00 for a 1.5 ounce bottle.

3. Guerlain introduced into evidence an affidavit and exhibit showing that some of Saxony's comparison charts and display bins did not identify Saxony as the source of Fragrance S and the other LIKE toiletries. The president of Saxony stated in a counter-affidavit that these displays had been discontinued in June, 1971 and the new advertising identified Saxony as the source of LIKE toiletries.

lief. The order was accompanied by "Findings of Fact and Conclusions of Law in accordance with F.R.C.P. Rule 52(a)[4] and Local Rule 7(a)."[5] The conclusions of law contain a provision that, "There is no material triable issue of fact in this entire case and all of the questions presented by Plaintiff's claims and Defendant's counterclaims can be and hereby have been resolved by summary judgment."

### III. SUMMARY JUDGMENT

■ Appellant contends that the court erred in holding that there were no genuine issues as to any material facts and that the case was proper for summary judgment.[6] In particular, appellant argues that the evidence presented through its affidavits and exhibits raises genuine issues of fact with respect to its allegation that Saxony violated Sec. 43 of the Lanham Act, 15 U.S.C. § 1125(a).[7] Appellant claims as violations of the Act that (1) in designating its product "Fragrance S" and in comparing Fragrance S to SHALIMAR, Saxony has falsely represented that Fragrance S is "similar" or "LIKE" SHALIMAR and (2) the use of Guerlain's trademark SHALIMAR and

Saxony's code name Fragrance S in the promotional materials used by Saxony is designed to confuse the public as to the origin of Fragrance S.[8]

#### (a) Evidence Submitted

In opposition to the motion for summary judgment, Guerlain submitted detailed affidavits of Harold I. Kaplan, one of its counsel, and Thomas Spelios, its research director.[9] Attached to the Kaplan affidavit is a verified report of Dr. Paul Bedoukian, a consulting chemist and specialist in the perfume and essential oil field. After analyzing SHALIMAR Cologne and LIKE Cologne S on the basis of odor components and lasting quality,[10] Dr. Bedoukian concluded:

" 'Shalimar' and 'Like Cologne S' cannot be considered as being alike or similar. They may not even be called the same type. Shalimar is by far a superior and expensive perfume."

Annexed to a supplemental affidavit of Kaplan is a verified report concerning a series of odor tests between SHALIMAR Cologne and Fragrance S Cologne prepared by Foster D. Snell, Inc., an independent analytical laboratory. A de-

4. Rule 52(a) provides that, "In all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon . . . ."

5. Both documents were prepared by counsel for appellee and adopted by the court. There were detailed findings of fact (29 in number) and conclusions of law (13 in number).

6. Summary judgment of course is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Rule 56 F.R.Civ.P. "On summary judgment the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions and exhibits] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

7. 15 U.S.C. § 1125(a) provides in relevant part: "(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or

any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

8. Guerlain also argues that the name Fragrance S is nothing more than an abbreviated form of Fragrance Shalimar and is thus an unauthorized and improper use of appellant's trademark. We cannot agree. The name "Fragrance S", while obviously referring to SHALIMAR, cannot be considered the same as the trademark SHALIMAR.

9. Guerlain also submitted affidavits of its secretary and a law clerk of one of the firms representing Guerlain.

10. With respect to the lasting quality of "Like Cologne S," Dr. Bedoukian stated: "The fragrance of 'Like Cologne S,' lasts, but the odor is much less attractive because it is largely due to synthetic chemicals having musk odors."

scription of those tests and the results thereof were summarized as follows:

" . . . Shalimar Cologne and Cologne S were compared in a series of odor tests. The tests consisted of having five observers smell both colognes and evaluate their odor both qualitatively and quantitatively.

"We found that the two Colognes were substantially different. They were dissimilar in both the major odor components and in strength. We also found that Shalimar Cologne lasted longer, an important factor for a high-quality Cologne."

Spelios' affidavit sets forth his findings and conclusions with respect to a series of tests he conducted, including a standard "blotter" test with ten persons. Spelios concluded:

"Fragrance S cologne is completely different in character and performance from Shalimar cologne according to criteria upon which accepted evaluations are based and, accordingly, the products must be deemed to be completely dissimilar with respect to characteristics related to product function." [11]

11. Spelios made the following conclusions with respect to the odor characteristics of SHALIMAR and Fragrance S Cologne:

"The Shalimar cologne fragrance (odor) smells like a characteristic oriental type perfume which is sweet, heavy, musky and very longlasting. It is rich and elegant; readily identifiable because of its distinct universally recognized fragrance . . . .
"The Fragrance S cologne smells like a common floral-type odor prevalent in talcum powders. It is not musky, nor oriental in basic character; both its top note and its residual odor being unlike Shalimar. It has no long-lasting qualities as a fragrance. Fragrance S does not smell like Shalimar, nor does it resemble the characteristic Shalimar oriental fragrance."

12. The affidavit of Spelios and the report of Snell had not been submitted to the court at the time of the first hearing but were submitted prior to the second hearing on September 11, 1975.

13. Objecting to the test, counsel for Guerlain stated:

"There was no objectivity in the terms of the number of sprays that were placed on each

The report of Dr. Bedoukian was presented at the first hearing on July 31, 1972.[12] At the close of that hearing the court stated:

"I think if I am to make any determination that there is no issue of similarity, that I have to make that determination by actual tests. It is not the subject of expert testimony."

**(b) *Findings of Fact re: Sniff Test***

■ At the third hearing, on September 18, 1972, counsel for Saxony, at the request of the court but over the objection of Guerlain, prepared a sniffing or smelling test.[13] The tests were described in detail in the finding of fact:

"13. Two samples of Plaintiff's FRAGRANCE S spray cologne, a sample of Defendant's SHALIMAR cologne spray and a sample of Defendant's SHALIMAR liquid cologne were applied one at a time to chemist's blotter strips from a sealed package. The samples of the fragrances were applied in approximately equal amounts and not allowed to contact or mix with one another. Each blotter strip was successively laid upon a separate clean

blotter. The room is currently permeated with the fragrance of all four bottles of perfume and fragrances. The blotters were provided ex parte by plaintiff's counsel. The treatment of the blotters after the fragrances had been applied was done completely ex parte by counsel. The disposal of the papers which are in some respect saturated with the four fragrances are in the disposal container in the courtroom. We object to this entire proceeding with respect to this testing procedure."

Guerlain also objects to the accuracy of the sniff test on the ground that neither Judge Real nor any other male (except "one who has spent his adult life in the cosmetic field") can be "considered as an ordinary consumer of the perfumery products involved herein". Guerlain argues that a female is more likely to buy a product like Fragrance S and therefore would be a better judge of the difference if any between SHALIMAR and Fragrance S. Guerlain stresses that in any event a question as to a material fact existed which precluded summary judgment.

sheet of yellow legal pad paper prior to applying the toiletry liquid so that the fragrances would not interfere with one another.

"14. The four fragrance samples on their respective blotter strips were then marked as exhibits and received in evidence. The four samples were then sniffed by the court one at a time; first one of Plaintiff's FRAGRANCE S samples, second one of Defendant's SHALIMAR samples, next the other of plaintiff's FRAGRANCE S samples and finally the second of Defendant's SHALIMAR samples.

"15. From the foregoing test indicated in paragraphs 11 through 14 it is determined that the fragrance of Plaintiff's FRAGRANCE S is similar to the fragrance of Defendant's SHALIMAR with the exception that SHALIMAR has a much stronger fragrance than that of FRAGRANCE S.[14] Plaintiff's advertising of FRAGRANCE S as being 'LIKE' or 'similar' to SHALIMAR is not false, misleading or fraudulent, but is truthful and accurate."

### (c) *Conclusions of Law*

The conclusions of law include the following:

"4. The name SHALIMAR is a fragrance description as well as a trademark.

"5. Plaintiff's reference to the name SHALIMAR as a fragrance description is a proper way to suggest to consumers that the fragrance of FRAGRANCE S is 'LIKE' or 'similar' to the fragrance of SHALIMAR. There is no legal harm done when a competitor seeks to take advantage of the good will of an unprotected product as opposed to the trademark identifying the source of the product.

"6. Plaintiff's representations and advertisements that the fragrance of FRAGRANCE S is 'LIKE' or 'similar' to the fragrance of SHALIMAR is not false, misleading or fraudulent and is truthful and accurate. This conclusion is reached following a sniffing test by the court.[15]

"7. Plaintiff has taken sufficient precautions with respect to its comparison chart, labels, packaging and advertising to notify reasonable consumers that only Plaintiff is the source of FRAGRANCE S and other 'LIKE' toiletries. Trademark infringement and unfair competition do not exist since reasonable consumers are not likely to be mistaken or confused into believing that FRAGRANCE S packages are produced by Defendant or that SHALIMAR packages are produced by Plaintiff. There has been no passing off by Plaintiff.

"8. The factual situation of Smith v. Chanel, Inc., 402 F.2d 562, 159 USPQ 388 (9th Cir. 1968) and the factual situation in this controversy are very similar and that decision controls and resolves most of the issues presented in this controversy."

### (d) *Effect of Smith v. Chanel, Inc.*

In Smith v. Chanel, Inc., *supra,* the case upon which the district court relied in granting summary judgment, this court defined the extent to which one manufacturer may use the trademark of another in advertising its own products. In *Smith* the appellant, as part of a sales program similar to that of Saxony, advertised a fragrance called "Second Chance", claiming that it was an exact duplicate of Chanel No. 5 yet costing only a fraction of the price. Chanel, Inc. commenced an action charging appellant with trademark infringement and unfair competition. The district court granted

---

**14.** In the district court hearings as well as on appeal, counsel for Guerlain maintained that in claiming Fragrance S was similar to Shalimar, Saxony was referring to more than simply odor. Thus, Guerlain contends that the chemical analysis of the different toiletries is relevant. We agree and hold that other factors including the lasting qualities of Fragrance S should be considered in determining whether or not it is "similar" to Shalimar.

**15.** The Findings of Fact and Conclusions of Law contain no reference to the tests reported in the affidavits filed by appellant. It would appear that the court relied primarily, if not solely, on the sniffing or smelling test which he conducted.

a preliminary injunction enjoining appellant from promoting its perfume as the equivalent of Chanel No. 5. This court reversed and remanded.[16]

■ In *Smith*, this court reaffirmed the principle that one may copy, if he can, the unpatented formula of another's products. Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 231–233, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964). Relying on Saxlehner v. Wagner, 216 U.S. 375, 30 S.Ct. 298, 54 L.Ed. 525 (1910); Viavi Co. v. Vimedia Co., 245 F. 289 (8 Cir. 1917), and Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc., 299 F.2d 33 (2 Cir. 1962), the court held:

" . . . one who has copied an unpatented product sold under a trademark may use the trademark in his advertising to identify the product he has copied . . . and may not be enjoined under either the Lanham Act, 15 U.S.C. 1125(a) (1964), or the common law of unfair competition, so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product." *Smith, supra*, 402 F.2d at 563.

■ Applying that principle to this case, it is clear that for purposes of comparative advertising Saxony could use Guerlain's trademark SHALIMAR to apprise consumers that Fragrance S is "LIKE" or "similar" to SHALIMAR.[17] The use of Guerlain's trademark, how-ever, constituted a violation of the Lanham Act if Saxony falsely represented that Fragrance S was "LIKE" or "similar" to SHALIMAR or if there was a reasonable likelihood that consumers would be confused as to the source of Fragrance S.

### (e) *Similarity of SHALIMAR and Fragrance S*

But for the sniff test conducted by the trial court, the only evidence with respect to the similarity between SHALIMAR and Fragrance S was that contained in the opposing affidavits of Kaplan and Spelios and a statement by Edward Shamie, president of Saxony, in his deposition that Fragrance S and SHALIMAR "smell somewhat the same".[18] As noted, the opposing affidavits submitted by Guerlain contained the results of various tests, including a blotter test involving ten people conducted by Foster D. Snell, Inc. and various odor tests involving five people by Spelios. Based on an analysis of odor components, lasting quality and actual character of the odor, the reports concluded that Fragrance S was not only unlike SHALIMAR from the standpoint of chemical composition but also in terms of fragrance and lasting quality. Given those reports and the favorable inferences which must be drawn therefrom, there was a genuine issue as to a material fact with respect to the similarity of SHALIMAR and Fragrance S. The district court attempted to resolve this issue through conducting the sniff test. In granting summary judgment, however, the court

---

**16.** On remand, the district court following a non-jury trial concluded that the defendant Smith was guilty of misrepresentation in that "Second Chance" was not an exact duplicate of Chanel No. 5. (N.D.Cal.Civil No. 45647 GBH May 22, 1973).

**17.** Whether SHALIMAR is both a fragrance and a trademark as found by the trial court or strictly a trademark indicating only origin as urged by Guerlain is unimportant in light of Smith v. Chanel, *supra*. For purposes of comparison, Saxony in either case may use the trademark SHALIMAR to identify the nature of its product.

**18.** Mr. Shamie in a discovery deposition testified:

"Q. I ask you, Mr. Shamie, what is the basis for your statement that Fragrance S is like or similar to Shalimar?

"A. My statement is that our Fragrance S is similar or like the fragrance of Shalimar.

"Q. What is the basis for that conclusion?

"A. Because they smell somewhat the same.

"Q. Who made that determination on behalf of Saxony?

"A. I did.

"Q. You did. Do you consider yourself a fragrance chemist?

"A. No. Not a chemist."

in effect resolved a disputed issue of fact without a trial.

#### (f) Confusion in Advertising

With respect to appellant's contention that Saxony's advertising would confuse consumers as to the source of Fragrance S, the district court found:

"17. Most of Plaintiff's comparison charts, display bins, signs, labels, bottles, boxes and packaging prominently identify Saxony as the source of FRAGRANCE S and all other 'LIKE' toiletries.

18. Among reasonable consumers there is no likelihood of confusion as to the true source of SHALIMAR and true source of FRAGRANCE S. Reasonable consumers would not be deceived or misled into thinking that FRAGRANCE S is sponsored by or produced by Defendant."

We agree with the district court that on this issue summary judgment was proper. Guerlain did not offer evidence to show that any customer had in fact been confused, but merely relied on the advertising banners and displays admitted as exhibits. Except for some advertisements which had been discontinued,[19] Saxony was identified as the producer of the LIKE colognes and perfumes.[20] The evidence presented was insufficient to overcome the obvious inference from the exhibits themselves that no reasonable customer could mistake the source of the advertised goods by believing they were manufactured by appellant. See B & L Sales Associates v. H. Daroff & Sons, Inc., 421 F.2d 352 (2 Cir. 1970), cert. denied, 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292.[21]

#### IV. CONCLUSION

We conclude that there was a genuine issue as to a material fact with respect to whether appellee falsely represented that Fragrance S is like or similar to SHALIMAR, and accordingly summary judgment was improperly granted.

Affirmed in part and reversed and remanded for trial in part.

19. No evidence was presented to contradict the affidavit of Saxony's president that the misleading advertising had been discontinued in June, 1971 and had not been used subsequent to that time.

20. Appellant could not rely on the allegations of its pleadings but was required to set forth specific facts showing that there was a genu-ine issue for trial. See Rule 56(e) F.R.Civ.P.; Alladin Plastics, Inc. v. Jerrold Stephan Co., 362 F.2d 532, 534 (9 Cir. 1966).

21. Upon trial, appellant will not be precluded from presenting additional evidence of consumer confusion insofar as it bears on the issue of false representation of similarity.