INTERNATIONAL ADJUSTERS, LTD., as agent and assignee and on behalf of Ingosstrakh and Black Sea and Baltic General Insurance Company, Ltd., Plaintiff,

v.

M. V. MANHATTAN, her engines, boilers, etc., et al., Defendants.

No. 72 Civ. 919.

United States District Court, S. D. New York.

Dec. 11, 1975.

---

**1294**

Vincent, Berg, Russo, Marcigliano & Zawacki, New York City, for plaintiff; William R. Vincent, Stephen A. Frank, New York City, of counsel.

Burke & Parsons, New York City, for defendants; Raymond J. Burke, Thomas A. Dillon, Jr., Raymond J. Burke, Jr., New York City, of counsel.

OPINION

BONSAL, District Judge.

Plaintiff, International Adjusters, Ltd. ("Adjusters"), on behalf of Ingosstrakh, an agency of the U.S.S.R. engaged in the business of marine insurance, and the Black Sea and Baltic General Insurance Company, Ltd. ("Baltic"), a corporation organized under the laws of the United Kingdom engaged in the business of marine insurance, commenced this admiralty action on March 2, 1972 seeking recovery of contributions made by Ingosstrakh and Baltic to a General Average declared by defendant Manhattan Tankers Co., Inc. ("Manhattan Tankers") in 1964.[1] Adjusters contends the General Average was improper because the M/V MANHATTAN ("the MANHATTAN") was unseaworthy when she broke ground at Baton Rouge,

[1] Originally, plaintiff sought recovery for alleged cargo damage during the stranding incident. By Memorandum filed December 12, 1972, this Court granted defendants' motion for summary judgment with respect to plaintiff's suit for cargo damage. *See International Adjusters v. M/V Manhattan*, 1973 A.M.C. 517 (S.D.N.Y.1972).

Louisiana in that she was overloaded with a cargo of grain and the stranding in the Mississippi River occasioning the General Average was proximately caused by such unseaworthiness and negligence on the part of the vessel's owners.

Defendants, the MANHATTAN, Manhattan Tankers, and Frank B. Hall & Co., Inc. and Frank B. Hall & Co. of New York, Inc. ("Hall") deny that the MANHATTAN was unseaworthy, and defendant Hall counterclaims for an additional General Average contribution for damages allegedly sustained by the MANHATTAN while she was stranded. In addition, the MANHATTAN, Manhattan Tankers, and Hall contend that Adjusters' suit is barred by laches.

The action was tried before this Court, sitting without a jury, on June 18, 1975. Based upon the evidence produced at trial, the facts of this case appear to be as follows.

On April 13, 1964, the MANHATTAN left Baton Rouge, Louisiana with a cargo of grain headed for Odessa, Russia. While heading down the Mississippi River en route to New Orleans and the Gulf of Mexico, the MANHATTAN grounded five times between April 14 and April 19, 1964. Then, on April 20, 1964, while afloat in the Mississippi River below Pilottown, the MANHATTAN became stranded apparently after losing her starboard anchor. The MANHATTAN remained stranded from April 20 through April 28, 1964 and part of the cargo of grain had to be unloaded in order to refloat her. Thereafter, a General Average was declared by the MANHATTAN's owners, Manhattan Tankers, and on December 23, 1964, a General Average adjustment statement was issued by defendant Hall in the amount of $923,342.15.

In compliance with the General Average statement, Ingosstrakh and Baltic together paid $205,282.89, such sum representing the cargo's share of the General Average. Hall now seeks an additional contribution from Ingosstrakh and Baltic in the amount of $51,238.65

for the alleged damages sustained by the MANHATTAN during the unloading operations.

The evidence indicates that the cargo interests were informed of all the circumstances leading up to the stranding of the MANHATTAN by the General Average statement of December 23, 1964, and that Ingosstrakh and Baltic paid the cargo's share of this General Average by February 16, 1965. The cargo interests did not instruct their agent, Adjusters, to investigate the matter until September, 1971, when Hall demanded additional contributions to the General Average. So Adjusters did not institute this lawsuit to recover sums paid to the General Average until nearly eight years after the incident. In the meantime, Captain Kosta Jeremic, master of the MANHATTAN at the time of the stranding on April 20, 1964, and Captain Alexander McLean, master of the MANHATTAN during the loading of the cargo at Baton Rouge, have both died.

■ Upon the facts presented and for the reasons stated below, the Court holds that Adjusters' cause of action is barred by laches. *See Larios v. Victory Carriers, Inc.,* 1963 A.M.C. 1704, 316 F.2d 63 (2d Cir. 1963); *Red Star Towing & Transportation Co. v. Henry Gillen's Sons Lighterage, Inc. and the Tug Lester J. Gillen,* 1967 A.M.C. 2639 (S.D.N. Y.1967).

In *Larios,* Judge Friendly held that:

" . . . when a plaintiff who asserts a maritime claim after the state statute has run, presents evidence tending to excuse his delay, the court must weigh the legitimacy of his excuse, the inference to be drawn from the expiration of the state statute, and the length of the delay, along with evidence as to prejudice if the defendant came forward with any. However, although a plaintiff who has delayed bringing suit beyond the analogous state period has the ultimate burden of persuasion both as to the excuse for his own delay and as to the lack of prejudice to the defendant,

. . . these two factors are not to be viewed independently. A weak excuse may suffice if there has been no prejudice; an exceedingly good one might still do even when there has been some." *Larios v. Victory Carriers, Inc., supra* at 66, 67.

Here, the cargo of grain was delivered to its port of destination in Odessa, Russia in May, 1964, and final payment under the General Average statement was made by Ingosstrakh and Baltic in February, 1965. Yet, Adjusters did not institute this lawsuit until May 2, 1972. Under the New York statutes of limitations for actions in contract (6 years) and tort (3 years), *New York Civil Practice Law and Rules* §§ 213, 214 (McKinney 1972), Adjusters' action is untimely.

Moreover, the cargo interests have offered no excuse for the delay other than the fact that the suit was instituted in response to Hall's demand for additional general average contributions. In the meantime, defendants MANHATTAN, Manhattan Tankers and Hall have shown prejudice by the delay through the deaths of Captains Jeremic and McLean.

Accordingly, the Court holds that Adjusters, as agent for the cargo interests, has not met its burden of persuasion as to the excuse for the delay and as to the lack of prejudice to the defendants, and, therefore, the cause of action is barred by laches.

Similarly, Hall's counterclaim for additional general average contributions is barred by laches. The supplemental General Average statement was not issued until August 25, 1969, more than five years after the incident and over four and one-half years after the initial General Average statement. The Court finds that such a delay was prejudicial to Ingosstrakh and Baltic and that Hall has offered no excuse for the delay. Moreover, it would be inequitable to bar Adjusters' claim for recovery of general average contributions and yet permit Hall to counterclaim for additional contributions arising out of the same incident.

■ The Court also finds that Adjusters has failed to prove, by a fair preponderance of the evidence, that the stranding occasioning the General Average was due to the unseaworthiness of the MANHATTAN when she broke ground at Baton Rouge, Louisiana. There is conflicting evidence with regard to the information imparted to Captain Jeremic as to whether the safe navigational depth of the Mississippi River was 40' or 44.' It appears that Captain Jeremic was made aware that the Mississippi River ran high in the spring of the year and that there was more water available than indicated by the official depth charts. In any event, the Court finds that Adjusters has not proved by a fair preponderance of the evidence that the MANHATTAN was overloaded when she sailed from Baton Rouge.

■ Moreover, the record indicates that the stranding in the Southwest Pass was due to navigational errors and not to unseaworthiness of the MANHATTAN at the time she broke ground. Under these circumstances, the declaration of a General Average was proper. *See Gilmore and Black, Law of Admiralty,* 267 (2d ed. 1975); *Isbrandtsen Co. v. Federal Insurance Co.,* 1952 A.M.C. 1945, 113 F.Supp. 357, 358 (S.D.N.Y.1952) *aff'd* 1953 A.M.C. 1033, 205 F.2d 679 (2d Cir.), *cert. denied,* 346 U.S. 866, 74 S.Ct. 106, 98 L.Ed. 377 (1953).

The foregoing constitutes the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

Settle judgment on notice.