**SQUILLANTE & ZIMMERMAN SALES, INC., Plaintiff,**

v.

**PUERTO RICO MARINE MANAGEMENT, INC., and Navieras De Puerto Rico, Inc., Defendants.**

Civ. No. 79–1972 (PG).

United States District Court, D. Puerto Rico.

June 11, 1981.

Harry Ezratty, San Juan, P. R., for plaintiff.

Jiménez & Fuste, San Juan, P. R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This case is before the Court on a Motion for Summary Judgment filed by the defendant on January 30, 1981. The request for summary judgment is directed to an Amended Complaint filed by the plaintiff and which is dated September 15, 1980. An opposition to the Motion for Summary Judgment was filed by the plaintiff and the same is dated March 25, 1981. The Court understands that there is no genuine issue as to any material fact and that at this time summary judgment should be entered on behalf of the defendants and against the plaintiff, dismissing the Amended Complaint referred to above. In support of the decision already announced by these present, we will discuss the factual and legal particulars which have lead us to enter said decision.

The original complaint filed in this case, dated August 27, 1979, alleged in essence that the defendants as maritime carriers failed to, refused to, and negligently maintained a load of refrigerated cargo transported in a refrigerated trailer, by ignoring the proper storage temperatures and by permitting plaintiff's cargo to spoil, rot, and decay. After the original complaint was filed, the defendants presented an original Motion for Summary Judgment which lead this Court to dismiss the complaint through its Opinion and Order of June 10, 1980. On that occasion, we concluded that as a matter of law, defendants' Motion for Summary Judgment had to be granted because the damages, as alleged, fell within the exception of Tariff Rule 400(H) of the tariffs of the Puerto Rico Maritime Shipping Authority in full force and effect. The tariff item specifically provides that the carrier may refuse to accept any shipment tendered for transportation where the temperature of the cargo is not within 5°F. of the temperature specified in the shipping documents as the temperature to be maintained during transportation. Carriage under those circumstances is at the cargo owner's risk for all loss and damage caused by spoilage. Our conclusion to dismiss on that original

occasion was based on the fact that the cargo was delivered to the defendants at a temperature which did not comply with Tariff Rule 400(H). The temperature was indeed high and by no means was under the plus or minus 5° range stipulated in the tariff. *Florencio Román, Inc. v. Puerto Rico Maritime Shipping Authority*, 454 F.Supp. 521 (D.P.R., 1978); *Firestone Tire & Rubber v. Almacenes Miramar, Inc.*, 452 F.Supp. 670 (D.P.R., 1978), aff'd. 588 F.2d 817 (1 Cir., 1978); *Gilbert v. 245 Packages, etc.*, 508 F.2d 1116 (5 Cir., 1975); *Norfolk & W. Ry. Co. v. B. I. Holser & Co.*, 466 F.Supp. 885 (N.D.Ind., S.Bend Div., 1979); *Chadbourn-Caribbean Industries v. Puerto Rico Maritime Shipping Authority*, 428 F.Supp. 493 (D.P.R., 1977).

After our Memorandum Opinion and Order dismissing the original complaint was entered, plaintiff requested the reconsideration of this Court's ruling, alleging that aside from the issue of whether the carrier had maintained proper temperatures or whether the cargo interest had delivered the cargo within the limits of temperature variation allowed by Tariff Rule 400(H), there existed the additional controversy of whether defendants had been negligent in the delivery of the cargo. Since plaintiff's motion for reconsideration spoke in terms of delay in delivery, we hinted that plaintiff was indeed alleging that there existed an additional cause of action for deviation. The Court, in the exercise of its discretion, and following the mandate of Rule 15 of the Federal Rules of Civil Procedure, permitted the allegations to be amended, setting aside the original order of dismissal referred to above. The Amended Complaint filed abandoned for all material purposes the theory of improper temperatures and concentrated on the issue of an alleged deviation as the legal justification for recovery in this case.

The Amended Complaint, dated September 15, 1980, alleges that the defendants negligently failed to and refused to properly care for plaintiff's cargo in that defendants were unduly late in the delivery of said cargo. The Amended Complaint further states that the defendants knew or should have known that said negligent delay would cause, as it in fact did cause, plaintiff's cargo to spoil, rot, and decay. We will discuss the facts on the issue of deviation as they have been presented to the Court.

## I.

On September 22, 1978, plaintiff delivered to the defendants at the Port of Elizabeth, New Jersey, refrigerated van No. 593–513, containing cabbage, lettuce, plums, and grapes. Said van was to be shipped to San Juan, Puerto Rico, on Voyage 159–S on board the S.S. BAYAMON. Although the ship was scheduled to sail on September 22, she was unable to sail as scheduled due to the fact that necessary repairs had to be performed to correct a leaking condition which had developed in its boiler. Without said repairs, the United States Coast Guard would have not permitted the vessel to sail. The S.S. BAYAMON actually departed Port Elizabeth on September 25, 1978, and arrived in San Juan on September 27, 1978.

Upon arrival, refrigerated container No. 593–513 was delivered to Frutas y Vegetales del Caribe, Inc. Said entity transported the trailer to its place of business and proceeded to unload the cargo. On September 29, at 11:30 A.M., the United States Department of Agriculture Inspector Alfredo Matos Rivera examined the cargo at Frutas y Vegetales del Caribe's premises and issued a report of said inspection. The report states that the cabbage showed no signs of decay, but part of the shipment was seriously damaged by bruising. The lettuce appeared to be decayed due to bacterial soft rot and the plums, although they showed no signs of decay, appeared to have been affected by freezing injury. The grapes were decayed due to gray mold rot.

On October 26, 1978, the plaintiff delivered refrigerated container No. 593–566 containing sweet peppers, cabbage, grapes, apples, green corn, and pears, to the defendants at their Port Elizabeth, New Jersey, facility for shipment to San Juan, Puerto Rico, on board the S.S. BAYAMON, Voyage 162–S. The ship was unable to sail as

scheduled on October 27 due to some necessary repairs which had to be performed in the ship's engine room, specifically, to the ship's boiler. The repairs were indispensable in order for the ship to sail. These repairs were approved by the United States Coast Guard. The S.S. BAYAMON departed Port Elizabeth on October 31, 1978, and arrived in San Juan on November 3, 1978.

Upon arrival, the refrigerated container in question was delivered to Frutas y Vegetales del Caribe, Inc., which, in turn, transported the same to its place of business and proceeded to unload the cargo. On the date of delivery, a United States Department of Agriculture Inspector, Mr. Alfredo Matos Rivera, examined the cargo at consignee's request and prepared a written report of inspection. The report states that the sweet peppers were generally decayed due to gray mold rot, mostly advanced. The cabbage was seriously damaged by black discoloration and decayed by bacterial soft rot. The grapes were decayed due to gray mold rot. The apples, green corn, and pears were inspected and found free from the conditions described above.

The usual duration of a voyage by sea from Port Elizabeth, New Jersey, to San Juan, Puerto Rico, in a ship similar to the S.S. BAYAMON, is four days. Plaintiff rests its claim upon the fact that in the first shipment referred to above, the vessel arrived at San Juan five days after the scheduled departure date. Insofar as the second shipment is concerned, plaintiff bases its claim on the fact that the vessel arrived in San Juan, Puerto Rico, seven days after the scheduled departure date. In both instances, plaintiff alleges that the delay, and thus the deviation, was the result of the vessel's negligence and unseaworthiness. The position taken by the defendants is to the effect that at all material times, the vessel was seaworthy and that the delay was necessary and reasonable and does not afford plaintiff with a cause of action for deviation.

## II.

■ The contract for marine transportation of cargo existing between the parties is represented by a short-form bill of lading which was issued to plaintiff in each instance. Said short-form bill of lading incorporates all the terms and conditions of the Puerto Rico Maritime Shipping Authority's regular long-form bill of lading and published tariff provisions. The document states that it shall have effect subject to the provisions of the Carriage of Goods by Sea Act. The incorporation of the Carriage of Goods by Sea Act into this domestic carriage is valid and we so find. *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.*, 349 F.Supp. 964 (D.P.R., 1970); *Fireman's Insurance Co. of Newark, New Jersey v. Gulf Puerto Rico Lines, Inc.*, 349 F.Supp. 952 (D.P.R., 1972); *Santiago v. Sea-Land Service, Inc.*, 366 F.Supp. 1309 (D.P.R., 1973).

■ The carrier's liability regarding seaworthiness of the vessel is defined by the Carriage of Goods by Sea Act (hereinafter referred to as COGSA). COGSA, Section 3(1), 46 U.S.C. § 1303(1), states that the carrier shall be bound, before and at the beginning of the voyage, to exercise due diligence to make the ship seaworthy. COGSA, Section 4(1), 46 U.S.C. § 1304(1), states that neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness, unless caused by want of due diligence on the part of the carrier to make the ship seaworthy. Although the duty of the carrier to exercise due diligence to make the ship seaworthy applies before and at the beginning of the voyage, the obligation of making the vessel seaworthy is either fulfilled or not fulfilled when the vessel breaks ground on the voyage. Gilmore and Black, The Law of Admiralty, 2d Ed. 1975, p. 152; *Isbrandtsen Co. v. Federal Ins. Co.*, 113 F.Supp. 357 (S.D. N.Y., 1952); *India Supply Mission v. S.S. Valiant Effort*, 283 F.Supp. 1011 (S.D.N.Y., 1967).

In the instant case, the seaworthiness of the vessel once the voyages in question were commenced has not been questioned, and any condition of unseaworthiness which may possibly have existed in no way affected the undertaking of the voyage. It is quite clear from the record that on both

voyages the repairs made were precisely to bring the vessel to a seaworthy condition before and at the beginning of the voyage as required by law. COGSA, Section 3(1), 46 U.S.C. § 1303(1).

As stated before, plaintiff alleges that the delay caused by the need of performing the mentioned repairs constitutes an unreasonable deviation from the scope of the contracted voyage. The Court disagrees with the position taken by plaintiff. Deviation can be defined to be a voluntary departure, without necessity or reasonable cause, from the regular and usual course of the voyage. *Hostetter v. Park*, 137 U.S. 30, 40, 11 S.Ct. 1, 4, 34 L.Ed. 568 (1890).

In order to determine whether there has been deviation, it is first necessary to determine whether the ship departed from the usual and customary course and whether it violated the expressed contractual provisions regarding the course of navigation. If there has been no such departure, then there has been no deviation, and the question of reasonableness does not arise. 2A Benedict on Admiralty, Section 122.

In this case, the defendants have provided sworn statements from the ship's officers of the S.S. BAYAMON for the corresponding voyages stating that the repairs to the ship's boiler were necessary in order to make the ship seaworthy. Furthermore, the affidavits state that due diligence was exercised in carrying out these necessary repairs. Plaintiff has not in any way contested these facts, and under the circumstances, we conclude that the concept of deviation is not applicable. The vessel's delay in departure was not a voluntary decision made by defendants' agents or employees. The decision obeyed to the need to perform required repairs to provide a seaworthy vessel. *The Rosalie Hull*, 4 F.2d 985, 987 (2 Cir., 1925).

As a last item on the issue of deviation, we will determine whether the delay in the vessel's departure constitutes a breach of the contract between the parties.

Rule 4 of the terms and conditions of defendants' regular long-form bill of lading states the following:

"SCOPE OF VOYAGE. The voyage may or may not include all usual, scheduled, geographic, direct, customary, ordinary or advertised routes, ports or places, whether or not named or disclosed in this Bill of Lading.

"(t)he ship, at any stage of the voyage and without notice to the shipper or consignee: (a) may ... depart from or change the intended, usual, scheduled, geographic, direct, customary, ordinary or advertised route, ... or delay at any ports or places...."

Under this bill of lading clause it is clear that defendants were not under an absolute contractual obligation of strict compliance with their scheduled arrivals and departures. Although it is not necessary to determine at this time the extent of the discretion which Rule No. 4 of defendants' long-form bill of lading confers upon defendants, it is apparent that some discretion is conferred, and, therefore, reasonable changes in the vessel's schedule may be made without breaching the contract. *The Hindanger*, 76 F.2d 13, 16 (9 Cir., 1935).

As the contract between the parties identifies the voyage on which the cargo will be carried, but does not specifically set forth any time or date for arrival at the port of destination, defendants' obligation was to accept, transport, and deliver the cargo to its destination within a reasonable time. Determination of what constitutes "reasonable time" must be based on the particular facts of each case. *W. A. Lighter & Co. v. United States Shipping Board, etc.*, 24 F.2d 536, 537 (E.D.La., 1928), aff'd. 33 F.2d 288 (5 Cir., 1929); *Cohn v. United States Shipping Board*, 20 F.2d 56, 59 (6 Cir., 1927); *Petroleum Export Corporation v. Kerr S.S. Co., Inc.*, 32 F.2d 969 (9 Cir., 1929); *Dietrich v. United States Shipping Board E. F. Corp.*, 9 F.2d 733, 745 (2 Cir., 1925); *Porter v. Bank Line*, 17 F.2d 513 (E.D.Va., 1927).

In the instant case plaintiff is engaged in the sale and shipment of fresh produce. Much of this produce is grown in California, transported overland in refrigerated vans to

markets in the City of New York, sold there, loaded into containers for shipment overseas to San Juan, delivered to consignee and sold to consumers or small retailers. Even under ideal circumstances, goods transported in this way would require approximately twelve days to reach their final destination. Under these circumstances, delays of one and three days to what is usually a four-day voyage is not unreasonable and does not constitute a breach of the contract for carriage of goods.

### III.

■ If we are to give a liberal interpretation to the Amended Complaint which governs this summary judgment incident and if we are to read between lines that the plaintiff is still insisting on its original argument to the effect that the carrier failed to maintain the proper temperatures in the carriage, we are bound to reconsider the facts of the case under the argument that delays of one and three days occurred in the delivery of the cargo at San Juan, Puerto Rico. Having considered the facts of the case and even assuming that the delay mentioned was unreasonable, it is patently obvious that the delays are not the proximate cause of the damage suffered by the cargo. In the case of Reefer Van 593–513, which arrived one day late, the plums showed signs of having suffered a prior freezing injury, and 27% of the cabbage was seriously damaged by bruising. In both cases no decay was apparent. The type of damage referred to above has not been attributed by plaintiff to the one-day delay.

In the case of Reefer Van 593–566, which arrived three days late, the sweet peppers were in mostly-advanced state of decay due to gray mold rot. The cabbage suffered decay ranging from 12 to 24%; none the less, the heads or portions of heads not affected by the condition were fresh and showed outer leaves with a good green color. The apples, corn, and pears contained in this reefer van were found to be free from said conditions. Plaintiff has failed at all stages in this litigation to create a genuine issue of material facts as to the relationship between the three-day delay and the actual condition of the cargo, especially when other cargo similarly shipped was found to be unaffected.

A re-examination of the documentary evidence submitted by defendants, and specifically among these an affidavit of Mr. John R. Slavinski, attest that the temperatures were maintained at reasonable degree. The documentation has remained unopposed.

No evidence to controvert these averments has been submitted by plaintiff. It was held by case law long before the addition of the last two sentences of Rule 56(e) that the party opposing the summary judgment motion does not have the right to withhold his evidence until trial. *Standard Dredging Corp. v. Inter American Center Authority*, 351 F.2d 470 (5 Cir., 1965).

■ In the present case the documentary evidence submitted by defendants establish the absence of material issue concerning the allegations of responsibility raised by plaintiff on its complaint with respect to the temperature maintained by defendants. It is settled that once a summary judgment is made and properly supported, the adverse party may not rest on the mere allegations of his pleading, but must "set forth specific facts showing that there is a genuine issue for trial". Rule 56(e) F.R.C.P.; *Smith v. Saxbe*, 562 F.2d 729 (C.A.D.C., 1977); *E. P. Hinkel, & Co., Inc. v. Manhattan Co.*, 506 F.2d 201 (C.A.D.C., 1974); *National Life Ins. Co., v. Silverman*, 454 F.2d 899 (C.A. D.C., 1971); *Saxony Products, Inc. v. Guerlain, Inc.*, 513 F.2d 716 (9 Cir., 1975); *E. C. Ernst, Inc. v. General Motors Corp.*, 482 F.2d 1047 (5 Cir., 1973).

■ No evidence has been offered by plaintiff to overcome the inference which arises from the evidence submitted by defendants. Furthermore, as a matter of law, defendants' motion for summary judgment must be granted. From the facts of this case it appears that the damages fall within the exception of Tariff Rule 400(H) (which was filed by defendants) in view that the cargo was delivered to defendants at a high temperature, not within the plus or minus

5° of said Tariff Rule 400(H).  *Florencio Román, Inc. v. Puerto Rico Maritime Shipping Authority*, 454 F.Supp. 521 (D.P.R., 1978); *Firestone Tire & Rubber v. Almacenes Miramar, Inc.*, 452 F.Supp. 670 (D.P.R., 1978), aff'd. 588 F.2d 817 (1 Cir., 1978).

WHEREFORE, in view of the foregoing, defendants' motion for summary judgment, is hereby GRANTED.  The Clerk of the Court is directed to enter judgment dismissing the Complaint filed herein, with costs.

IT IS SO ORDERED.